## BELLINGER *vs.* CRAIGUE.

The law implies an undertaking, on the part of a physician or surgeon, that he has ordinary skill, and that he will execute the business intrusted to him with ordinary care and skill. If he fails in this duty, he is guilty of a default in his undertaking, and cannot collect the pay for his services, but is liable in damages to the person who employed him.

Where a physician was employed to treat a broken limb, and made several visits in the course of his employment; *held* that the contract was *entire*, and that performance must be shown, to entitle him to recover any thing for, his services.

In the absence of evidence that the physician has failed in his duty, *it seems* that performance will be inferred, upon the principle that the law will not presume a party guilty of a breach of duty, or of negligence or fraud.

A fact impliedly averred, may be traversed in the same manner as if it was expressly averred ; and the general denial, of the code, puts all the allegations of the complaint in issue, whether expressed or implied.

Where a physician sued a party, before a justice of the peace, for services rendered by him in treating a broken limb, and the defendant appeared and put in an answer containing a general denial ; *held* that the fact of performance of the contract, by the plaintiff, was impliedly averred in the complaint and denied by the answer; and that the judgment of the justice in favor of the plaintiff, for his services, necessarily included the fact of performance on the part of the plaintiff, so that it could not be again litigated between the same parties.

Where a defendant went to trial, in a justice's court, on his general denial of a complaint for professional services as a physician, and withdrew all claim for *malpractice ; held*, nevertheless, that the question was necessarily included in the issue, and determined by the judgment.

A claim for damages for *malpractice*, in such a case, is not *new matter*. New matter admits the plaintiff's demand, but such a claim denies its existence altogether.

It is not a *counter-claim.* Strictly speaking, where the plaintiff has no claim, the defendant cannot have a counter-claim.

The two claims, in such a case, cannot co-exist; and a recovery by either party will effectually bar the action of the other party.

APPEAL from a judgment rendered at a special term, after a trial at the circuit, on exceptions. The facts appear in the opinion of the court.

*M. H. Throop*, for the plaintiff.

*G. A. Hardin*, for the defendant.

MORGAN, J. In this action the plaintiff claims damages of the defendant for the loss of services of his wife, on account of the alleged malpractice of the defendant, who, as surgeon and physician, was employed to set, reduce and cure a broken leg of plaintiff's wife ; but by negligence, ignorance and un-skillfullness in his profession failed to cure it ; and under his treatment it in fact became incurable. In consequence of which the plaintiff was deprived of her services and put to great expense in procuring other professional aid and assistance.

The defendant denied the allegations of the complaint ; and answered specially, that the reason why the limb did not heal was through the mere negligence, carelessness and misman-agement of plaintiff's wife. After the issue was thus joined, the defendant sued the plaintiff before a justice of the peace of Little Falls, Herkimer county. The parties duly appeared before the justice and joined issue. The defendant, who was plaintiff before the justice, complained and alleged that Bel-linger was indebted to him in the sum of $100 for medicines and professional services, and *especially for professional services and skill bestowed in attending the wife of Bellinger, and in setting, securing and attending to a fractured limb of Bellinger's wife.* Bellinger's answer before the justice de-nied each and every allegation of the complaint. It also averred that the services were so unskillfully performed that they were of no value. And Bellinger claimed judgment for costs of suit.

On the trial before the justice, Bellinger informed the jus-tice *that he withdrew his second answer, and all claim and defense founded upon any want of care in Craigue.* Craigue objected to its withdrawal, but the justice overruled the objec-tion. The justice therefore, on proof of Craigue's bill for at-tendance upon Mrs. Bellinger, allowed for every visit and the price as charged by him. The justice says *that he did not in fact take into consideration the claim for malpractice.* Judg-ment was rendered for Bellinger for the amount of his bill,

$15.50, besides costs of action. The defendant in this action, Dr. Craigue, obtained permission to put in a supplemental answer to the plaintiff's complaint, and to set up the justice's judgment, thus obtained, as a bar to the plaintiff's demand.

The cause was tried before Justice MULLIN, at Herkimer, in May, 1858 ; and the plaintiff, Bellinger, having given evidence tending to prove a case of *malpractice*, the defendant, under objections from the plaintiff's counsel, was allowed to prove the pleadings, proceedings and judgment before the justice as above detailed. Justice Mullin, however, reserved the question as to the legal effect of these proceedings, and finally overruled the defense ; and the defendant went into proof on his part tending to show that it was not his, but Mrs. Bellinger's, fault, that the limb did not get well. The question of negligence was submitted to the jury, and they found a verdict against the defendant and in favor of the plaintiff, for nine hundred dollars damages. Exceptions being taken by the defendant, the question comes up, on appeal to this court, whether the judgment of the justice, at Little Falls, between these same parties, is a bar to the plaintiff's demand in this action.

The plaintiff's counsel makes a point, or rather a suggestion, that the limited jurisdiction of a justice's court will in some way impair or diminish the conclusiveness of his judgments as to those matters within his jurisdiction. He, however, finally admits that it is too late to ask a decision against the conclusiveness of a justice's judgment on this ground. And in this concession, which is doubtless due to the authorities in this country, the counsel must see that it is the duty of this court to give full effect to the maxim, *interest reipublica ut sit finis litium*, by making the judgment of a justice's court final, as to the subject matter thereby determined.

There is also a suggestion in the counsel's argument, that the justice's judgment was fraudulently obtained, and therefore it may be disregarded, or in some way weakened, so as not to conclude the parties in this action. But it would not

Bellinger *v.* Craigue.

become us to listen to this suggestion, when there is no intimation in the pleadings or evidence, that the judgment was fraudulently obtained.

The question then is narrowed down to the single point, whether the plaintiff's demand in this action was adjudicated before the justice's court. It may be conceded that it was not actually litigated there ; for it was finally withdrawn from the consideration of the court ; and the justice says that he did not in fact take it into consideration. Still it cannot be denied that the judgment of a competent court is not only conclusive on all questions actually and formally litigated, but as to all questions *within the issue*, whether formally litigated or not. (*LeGuen* v. *Gouverneur*, 1 *John. Cases*, 492. *Marriott* v. *Hampton*, 7 *T. R.* 265. *Davis* v. *Tallcott*, 2 *Kern.* 184. *Jones* v. *Scriven*, 8 *John. R.* 453. 2 *Smith's Lead. Cas.* 442, (*in notes ;*) and see *Fidler* v. *Cooper*, 19 *Wend.* 285 ; *Edwards* v. *Stewart*, 15 *Barb.* 67.)

In this case, the defense being withdrawn, it cannot be said that it was actually litigated ; and if the plaintiff is barred of his action, it is because his demand was *impliedly* and *necessarily* within the issue joined before the justice, and its determination *necessarily* included in the judgment.

A fact *impliedly* averred may be traversed in the same manner as if it was expressly averred. (*Prindle* v. *Caruthers*, 15 *N. Y. R.* 429. *Haight* v. *Holley*, 3 *Wend.* 263. *Chambers* v. *Jones*, 11 *East.* 406.) The general denial of the code doubtless puts all the allegations of the complaint in issue, whether expressed or implied. If the plaintiff's claim is a denial of the defendant's claim before the justice, and *not new matter*, it was within the issue tried before the justice. But if it is new matter, it was not within the issue. The new matter mentioned in § 149 of the code is that which admits and avoids the cause of action set up in the complaint, and constitutes a defense. (*Brazill* v. *Isham*, 2 *Kern.* 9 ; *and see* 3 *Duer*, 685 ; 12 *How.* 445.) It must be specially pleaded. (*McKyring* v. *Bull*, 16 *N. Y. Rep.* 297.) The denial of the

plaintiff's complaint, before the justice, must therefore be held and regarded as putting in issue all the allegations of the complaint, and as controverting all the facts stated or implied therein ; but it did not put in issue any *new matter ;* and if the second answer constituted new matter, it was not within the issue formed by the second denial. But was it *new matter* of defense ? or was it admissible under the general denial ? Clearly, if Dr. Craigue had set forth the contract in his complaint, as the law would interpret it, he would have substantially charged " that being a surgeon and physician, he undertook, for a reasonable compensation to be paid to him by Bellinger, to treat his wife's broken limb with a reasonable degree of care and skill." The law implies a promise on the part of the surgeon, that he has ordinary skill, and that he will execute the business entrusted to him with ordinary care and skill. If he fails in this duty, he is guilty of default in his undertaking, and cannot collect the pay for his services, but is liable in damages to the persons who employed him. (1 *Chitty on Cont.* 482, 3.) The contract is *entire,* and *performance* is necessary, to entitle the surgeon to recover any thing. If the complaint had expressed such a contract, and if it had alleged before the justice that the doctor had performed it in all things on his part, a denial of these allegations would have put the question directly in issue. It would not be *new matter,* to deny that the doctor had performed his contract as thus stated in his complaint ; and yet it would be a full defense to the action, if Bellinger had succeeded in proving it. The law would not, on the trial, presume that the plaintiff had neglected his duty and made default in his undertaking ; for a breach of duty, or negligence, or fraud are not to be presumed. (*Starr* v. *Peck,* 1 *Hill,* 270.) The burden of proof is therefore cast upon the defendant, to disprove the allegation of performance, in such a complaint. But if he neglects to offer any such proof, the fact of performance is presumed, and necessarily must be, to authorize the doctor to recover for his services. The judgment of the justice in favor

of the plaintiff in such a case, would imply performance of the contract on his part. The *fact* of performance is found, or adjudicated in favor of the doctor ; and I think cannot be again disputed, in an action between the same parties.

Now although *new matter* cannot be proved under a general denial, most of the defenses which could have been proved under the old general issue of *non-assumpsit*, such as release, statute of limitations, insolvent discharge, arbitrament, &c., must still be brought forward by the defendant as matters of special defense, or the defendant loses the benefit of them. These defenses will not support an action, but must be used, if at all, to defeat an action. It is, however, different with the defense called a *counter-claim*. That may be used to sustain, as well as to defend, an action. It may co-exist with the plaintiff's claim, and is simply a cross action, to enforce a legal or equitable set-off. It *admits* the plaintiff's demand, but seeks to reduce it, or even extinguish it, by a legal or equitable offset. And I think the defendant always has an election to recoup his damages or wait and bring his suit. It may well be that his damages exceed the plaintiff's demand, and as he cannot split up his claim and use part of it to extinguish the plaintiff's demand, and bring suit for the residue, he ought not to be bound to recoup his damages, in any case. Nor do I think the authorities require it of him. (*Reab v. McAlister*, 8 *Wend.* 109. 14 *id.* 257. 5 *Hill*, 76.)

But where there is *no claim* on the part of the plaintiff there cannot, strictly and logically speaking, be a *counter-claim*. The claim of Bellinger against the defendant in this case does not admit the defendant's claim, but denies its existence, altogether. The two claims cannot coexist. If Bellinger's claim is good, and if judgment had passed in his favor before the suit in the justice's court was disposed of, it would have estopped the defendant from saying that he had performed his contract, and would have barred his action before the justice. This point was decided in the case of *Edwards* v. *Stewart*, in this court. As estoppels are mutual,

the converse of the proposition must be held in this case. And I think the point is thus held in *Davis* v. *Talcott* in the court of appeals. (*See Judge Gardiner's opinion, 2 Kernan,* 189.)

The result is that the judgment must be reversed, and a new trial granted, costs to abide the event.

ALLEN, J. concurred.

MULLIN, J. dissented.

Judgment reversed.

[ONONDAGA GENERAL TERM, July 3, 1860. *Allen, Mullin* and *Morgan,* Justices.]