Dale & Banks v. Donaldson Lumber Co. and Putnam.

---

## DALE & BANKS v. DONALDSON LUMBER CO. AND PUTNAM.

1. **AGENT:** *When personally liable on contract.*

   If an agent in contracting in the name of his principal exceed his authority, so that the principal is not bound, he will himself be liable for the damage thus occasioned to the other contracting party, although he may have been innocent of any intention to defraud,

2. **CONTRACTS:** *Implied by calling physician.*

   When a physician is called in generally, and without limitation to his services, there is an implied engagement that he shall attend the patient through that illness, or until his services are dispensed with.

APPEAL from *Hot Spring* Circuit Court.
Hon. J. B. WOOD, Judge.

*Crawford & Crawford,* for appellants.

1. Corporations are bound by the acts of their agents within the apparent scope of their authority. *Story*

Dale & Banks v. Donaldson Lumber Co. and Putnam.

*Agency, sec. 127.* Putnam was one of the incorporators, owner of one-third of the stock, a director, secretary and business manager of the company. Plaintiffs had no notice of any limitation upon Putnam's authority, and he will be held to have the usual scope of authority of agents of his class. See *2 L. R. Ex., 228; 82 Ill., 73.*

Appellees claim that Putnam had no authority to make a contract of this kind; that it was *ultra vires.* A plea of this nature puts the burden of proof on the company. (*Morawetz Private Corps., sec. 154*). And they have offered no proof. Courts do not favor this plea, especially after the contract is executed, without objection, or when it would work an injustice. *98 U. S., 621; 96 ib., 267.*

The doctrine of *ultra vires* was intended for the protection of the state, and not for the purpose of enabling private corporations to work a fraud. *98 U. S., supra; 25 Fed. Rep., 812.*

2. If Putnam acted outside of his authority in sending the telegram, he will be personally liable on an implied warranty to the same extent that he would, had the telegram been sent in his own name. *Smith's Merc. Law, 213; Newman Pl. & Pr., 206; 14 Vt., 195; 7 Wend., 315.*

Every one who assumes to act for another, as his agent, thereby impliedly warrants that he has sufficient authority to do so, and upon that warranty, a party injured may recover without regard to the agent's moral innocence. *Thompson Liability of Officers, etc, secs. 9–14; 44 N. H., 196; 2 N. H., 352; 46 N. J. L., 380; 22 ib., 343; 26 N. Y., 117; 53 N. Y., 467.*

3. When a physician is called in to attend a patient, it is the custom and general understanding that he is to attend the case until death or recovery, unless sooner discharged. *Rogers' Law and Medical Men, p. 72; 67 Barb. (N. Y.), 578; St. & R. on Neg., sec. 441; Lawson Usage,*

*etc., p. 278, sec. 136; 44 Md., 295; 1 Mills' Const. Rep., 150; 109 U. S., 99; 12 Ark., 645.*

The doctrine that a physician should be summoned each time he is needed, is dangerous and not the true rule. *Wood on Master and Servt., 340; 40 Cal., 357.*

When a physician takes charge of a case and fails to give it the proper attention, he is civilly and criminally liable. *5 C. & P., 332; 3 Gr. on Ev., sec. 129; Rogers' Law and Medical Men, ch. 11; 34 Iowa, 286; Wharton Neg., sec. 731; St. & R. Neg., sec. 441; 62 Me., 536; Rogers' Sup., 57, 66, 72, 74.*

The retainer in this case was a continuing one, until recovery, death or discharge. *25 Ark., 170; ib., 185.*

See, also, *45 How. Pr., 57; 67 Barb. 578; 62 Me., 536; 64 Me., 313.*

These cases show that the contract of a physician to attend a patient, in the absence of any limitation, is an entire one—to last throughout the illness; that the law implies this in the absence of an express agreement to the contrary.

4.   Putnam's tender was not good.

1. Agent's personal liability on contract.

SMITH, J.   The Donaldson Lumber Company was a corporation of Iowa, engaged in the manufacture of lumber in this state. Putnam was its secretary, treasurer and general business manager, besides being one of its directors and the owner of nearly one-third of its stock. One Watson, a laborer employed by the company, was dangerously wounded, not, however, in the course of his employment, but in a private brawl. Thereupon Putnam sent the following telegram :

"DONALDSON, ARK., 10-7-1883.

"To DR. DALE, Arkadelphia:

" Come here immediately by quickest means; man shot in breast.   [Signed]        DONALDSON LUMBER CO." .

Dale & Banks v. Donaldson Lumber Co. and Putnam.

The doctor responded to this by going in person to Donaldson, and giving to the wounded man such treatment as was needed. The visit was repeated, and then, by advice of his friends and with the encouragement of Putnam, the patient was removed to Arkadelphia for better treatment. He was attended daily by the doctor and his partner in business for the space of six weeks. The bill amounted to $146, and it was charged to the lumber company. At the end of the year payment was demanded of Putnam, as the agent and representative of the company.

He denied all liability in the premises, but offered to pay, by way of compromise, $10, the price of the first visit. This proposition was declined and the physicians brought this action against the company and Putnam to recover compensation for their professional services.

The company denies that Putnam had any authority, express or implied, to bind it to pay for such services. Putnam also denied his individual liability, although he admitted he sent the message to the doctor, and that he exceeded his authority in signing the name of the corporation. His excuse for this act was, that he was personally unknown to the physician and he was afraid he would not come, if he summoned him in his own name.

A jury was waived and the trial was had before the court, which found that Putnam was acting in this matter outside of the apparent, as well as real, scope of his authority. It therefore gave judgment in favor of the lumber company. And its finding is, in that behalf, approved. But it further found that Putnam, in sending the telegram, intended to make himself liable for only one visit to Watson, and that the proof fails to establish a known and general usage and custom, that when a physician is called in he is expected to attend the patient through that particular illness. He therefore declared, as a matter of law, that Put-

nam was liable for one visit and no more; and gave judgment accordingly. The plaintiffs have appealed.

The facts of the case are not substantially in controversy. There is no doubt that Dr. Dale went to Donaldson and took charge of Watson's case, in reliance upon the telegram; and that he rendered the services in the expectation that the lumber company would pay for them; and that the sole reason why he so believed was the reception of the telegram.

The company, as we have seen, was not responsible; but Putnam was, upon an implied warranty of his authority. "If the agent exceed his authority, so that his principal is not bound, he will himself be liable for the damage thus occasioned to the other contracting party, although he may have been innocent of any intention to defraud." *Smith's Mercantile Law, 3d Am. Ed., 213.*

2. Calling in physician: Liability for subsequent visits.

The only question, then is, as to the extent of Putnam's liability. He testified that he thought it was impossible for Watson to live long, and that his only motive in sending the dispatch was to gratify the wish of a dying man. He also directed Watson's friends, in case Dr. Dale could not come, to send a dispatch for a certain physician at Malvern, and he would be responsible and pay the expenses.

The plaintiffs and another practitioner of medicine who was disinterested, stated that it was understood, by the profession, when a medical man was called to the bedside of a patient, he was employed to attend him until the case terminated by death or recovery, unless the medical man was himself discharged sooner.

And the finding of the court that such was not the custom of the country was opposed to all the testimony there was on this point.

Dale & Banks v. Donaldson Lumber Co. and Putnam.

But we apprehend this is a question of law rather than of proof. *Ballou v. Prescott, 64 Me., 305,* is an instructive case on this subject. That was a case against a surgeon for malpractice in treating an injury to the plaintiff's leg; the alleged negligence consisting in quitting the case while the patient still needed attention. The court affirmed a verdict of $450 against the defendant. The trial judge had instructed the jury as follows. "Here I understand the surgeon was called in the usual way; nothing said about the time during which he was to attend, and he went in obedience to that call. If nothing more were said or done the law would require him to give such attention as the case required."

Commenting on this charge, the court says: "In many cases, from certain admitted facts, the law will infer a definite contract, implied perhaps, but none the less certain and distinct. Much more will it infer certain elements as belonging to particular contracts, or impose specific duties in connection with and growing out of special undertakings. Especially is this true of all of that class of cases in which the contract grows out of an employment, in a greater or less degree public in its nature. All professional business partakes somewhat of this character. The care and skill which a professional man guarantees to his employer are elements of the contract to which he becomes a party on accepting a proffered engagement. They are implied by the law as resulting from that engagement, though it be but verbal, and nothing said in relation to such elements. So, continued attention to the undertaking, so long as attention is required in the absence of any stipulation to the contrary, is equally an inference of the law.

"If a counsellor at law undertakes the management of a cause, nothing more being said or done than simply an

13–48

offer and acceptance of a retainer for that purpose, it will hardly be denied that an abandonment of the cause before its close would be as much a violation of the contract with the client as a neglect to use the requisite care and skill in its prosecution, and the duty of contiuued attention is equally an implication of the law as that of exercising the required care and skill. That the same principles apply to the employment of a physician or surgeon there can be no doubt: If he is called to attend in the usual manner, and undertakes to do so by word or act, nothing being said or done to modify this undertaking, it is quite clear as a legal proposition; that not only reasonable care and skill should be exercised, but also continued attention as long as the condition of the patient might require it, in the exercise of an honest and properly educated judgment; and certainly any culpable negligence in this respect would render him liable in an action." Citing *Sherman and Redfield on Negligence, sec. 441.*

In *Bradley v. Dodge, 45 Howard's Pr. Rep., 57,* the defendant called at the office of the plaintiff, a physician, and not finding him, wrote on his business card, "Call on Mrs. D——, at No. 769 Broadway;" left the card with a clerk in the office with directions to hand to the physician, and to tell him to come as soon as possible. The physician called on Mrs. D—— several times professionally, and performed services to the value of $98. And it was held that the defendant was liable to pay the bill.

In *Pottter v. Virgil, 67 Barbour, 578,* the head note, is : "When a physician is employed to attend upon a sick person, his employment continues while the sickness lasts ; and the relation of physician and patient continues, unless it is put at end to by the assent of the parties, or is revoked by the express dismissal of the physician."

Putnam certainly knew that the plaintiffs were continu-

ing their attentions to the wounded man under the origi-nal employment. And if he did not expect to be held for the value of those services beyond the first visit, good faith required him to give notice to that effect. A phy-sician and his employer may make such contract as they see fit, limiting the attendance to a longer or shorter period, or to a single visit; and the law will enforce the contract they have made. But if there be no such limita-tion, and the physician is called in generally, the presump-tion is that his services are rendered under an implied en-gagement to attend the patient through that illness, or until his services are dispensed with. We perceive no distinction between Putnam's liability for the first and any subsequent visit.

The judgment in favor of the lumber company is affirmed, and, as to the other defendant it is reversed, and a new trial is ordered.