# CHARLESTON.

## LAWSON *v.* CONAWAY.

Submitted June 9, 1892.—Decided December 3, 1892.

37  159
53  491
53  496

37  159
f 59  270
59  273

37  159
d63  87

37  159
65  729

1. MALPRACTICE—EVIDENCE—COMPETENCY OF.

    In an action against a physician for malpractice a witness testified, that he was "well acquainted with the physical ability of the plaintiff to perform manual labor both before and since the breaking of his arm ; that the said plaintiff before the injury was a strong, able-bodied man ; that since he was hurt the plaintiff has been unable to perform more than one half a man's work ; that witness had worked with plaintiff both before the arm was broken and since ; that witness and plaintiff were both farmers and lived near together." This testimony was competent, and ought not to have been excluded. (p. 161.)

2. MALPRACTICE—EVIDENCE—COMPETENCY OF.

    The general rule is that, where a party is competent to prove the motives and intentions, which have governed his own conduct, he may state in general terms, that he did or refrained from doing a particular thing material to the issue on account of information received from a third person; but he can not go into details or give conversations with third persons not in the hearing of the opposite party. (p. 162.)

3. MALPRACTICE — NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — PHYSICIANS.

    When a physician is employed to attend upon a sick person, his employment continues while the sickness lasts, unless put to an end by the assent of the parties or revoked by the express dismissal of the physician. The physician is bound to bestow such reasonable ordinary care, skill and diligence, as physicians in the same neighborhood in the same general line of practice ordinarily have and exercise in like cases. Time and locality are to be taken into the account, and the physician is bound to exercise the average degree of skill possessed by the profession in such locality. In the absence of special agreement his engagement is to attend the case as long as it requires attention, unless he gives notice of his intention to discontinue his visits or is dismissed as aforesaid ; and he is bound to exercise reasonable and ordinary care and skill in determining when his attendance should cease. But his engagement is not to cure the patient ; that is, he does not insure that his treatment will be successful. The mere failure to effect a cure does not even raise a presumption of a want of

proper care, skill and diligence. It is the duty of the patient to co-operate with the physician, and to conform to his prescriptions and directions, and if he neglect to do so, he can not hold the physician responsible for his own neglect. On the other hand, he has a right to rely upon the instructions and directions of his physician and incurs no liability by so doing. (p. 168.)

4. Malpractice—Estoppel—Physicians.

If a physician sue for his services, and there is no appearance by the patient, defendant in that suit, recovery by the former does not estop the latter from bringing a cross action for malpractice ; but if he appear, unless the record show that it was not to defend, but solely to disclaim the waiver of his own right, he is estopped by the recovery. (Holt, J., dissenting). (p. 173.)

5. Malpractice—Physician—Declaration—Pleading—Abandonment.

A declaration charged that the defendant, after having entered upon the treatment and cure of the plaintiff, "carelessly, negligently and unskillfully conducted himself in that behalf," *etc.*, and that in consequence of the defendant's "careless, negligent, improper and unskillful attention," *etc.*, the injury resulted. Under these averments, the plaintiff might recover for abandonment of his treatment by the physician. (p. 165.)

*G. D. Smith* and *Stuart & Farr* cited 27 W. Va. 150 ; 51 Me. 594; 27 N. H. 460 ; 27 W. Va. 146, Syl. p't 7; Shear & Redf. Neg. § 606 ; 19 W. Va. 325, Syl. p't 14; 15 N. Y. 415 ; 20 How. (U. S.) 34 ; Stark. Ev. 526 ; 35 W. Va. 143, Syl. p't 2; Sto. Ag. § 13 ; 1 Greenl. Ev. §§ 98, 99 ; 55 Am. Rep. 15 ; 5 W. Va. 325 ; 1 Greenl. Ev. § 113 ; 2 Whar. & Stil. Med. Juris. § 1092 ; 11 Gratt. 405 ; 21 W. Va. 741, 742 ; 17 W. Va. 684, Syl. p't 19 ; 14 Wall. 447 ; 24 W. Va. 606, Syl. p't 2 ; 48 Am. Dec. 481–487 ; 56 Ind. 497 ; 25 W. Va. 227; 17 W. Va. 190 ; Stark. Ev. 526 ; 17 W. Va. 216 ; Whar. Neg. §§ 423, 425 ; 27 W. Va. 32, Syl. p't 8 ; Shear. & Redf. Neg. § 30; 18 St. Rep. 441; Syl. p't 1 ; 59 Am. Dec. 388; 7 St. Rep. 900 ; 64 Me. 305; 31 Me. 375; 109 Mass. 286 ; 14 W. Va. 857 ; 21 W. Va. 710, 711.

*D. F. Pugh* and *H. M. Russell*, attorneys for appellee :

I.—*Expert testimony.*—23 W. Va. 288 ; Rog. Ex. Test. § 3 ; 114 Mass. 440.

II.—*Where the conduct of a party is in question, it is proper to show the information, on which he acted.*—1 Tay. Ev. 513.

III.—*A physician liable only for failure to exercise ordinary care*

*diligence and skill.*—Shear. & Redf. Neg. §§ 433, 434, 436; 49 N. J. Law 685 ; 85 Ill. 194 ; 11 Am. Rep. 141 ; Cool. Torts 648, 649 ; 84 Ind. 189 ; 48 Vt. 557 ; 67 Wis. 504 ; 40 N. W. Rep. 228.

IV.—*A physician not bound to continue his visits after dismissal or after emergency passed.*—Sher. & Redf. Neg. § 441 ; 64 Me. 305 ; 48 Ark. 188.

V.—*In an action for malpractice contributory negligence is a complete defence.*—115 Ind. 334 ; 95 Ind. 376 ; 9 Minn. 260 ; 91 Pa. St. 362 ; 115 Pa. St. 599.

VI.—*If plaintiff sue for abandonment, he should declare specifically upon that feature.*—3 Watts 225 ; 15 W. Va. 628.

VII.—*Plaintiff can recover only the expenses consequent on malpractice.*—Field Dam. § 600 ; 31 N. H. 119.

VIII.—*On motion for new trial parol evidence of appellant must be disregarded, where it conflicts with that of appellee.*—21 W. Va. 729.

IX.—*Recovery by physician in an action for services bar to an action for negligence.*—49 N. J. L. 685 ; 48 Ark. 188 ; 31 Barb. 534 ; 75 N. Y. 15 ; Ac. & Def. 1 Fields Lawy. Br. § 91.

LUCAS, PRESIDENT :

This was an action on the case for damages against a physician for malpractice. The plaintiff sued in the Circuit Court of Tyler county for ten thousand dollars damages, but the jury found for the defendant, and the court gave judgment. The plaintiff moved for a new trial, and took sundry exceptions, and the case comes before this Court on the bills of exception reserved in the court below and made a part of the record. We will take these up in their order, and dispose of such of them as are material to the issue involved.

The first exception is to the ruling of the Circuit Court in excluding the following testimony of one C. W. Smith, called for the plaintiff : "Witness testified that he was well acquainted with the physical ability of the plaintiff to perform manual labor both before and since the breaking of his arm ; that the said plaintiff, before the injury, was a strong, able-bodied man ; that since he has been hurt the plaintiff has been unable to perform no more than one half

a man's work; that witness had worked with plaintiff both before the arm was broken and since; that witness and plaintiff are both farmers, and leave near together." We think that this was competent testimony and was improperly excluded. It is the expression of neither an opinion nor a conclusion, but a fact going to show the inability to work on the part of the plaintiff, as compared with his former condition, and was relevant and proper. In the form given, it was certainly not very valuable testimony, but that was for the jury. Its relevancy and competency were unquestionable. 1 Greenl. Ev. § 440.

The second bill of exceptions was taken because the court admitted the following testimony given by the defendant, E. B. Conaway, in his own behalf: "State whom you employed to treat plaintiff's arm after the 5th day of October, 1888. Answer: On the 6th day of October, 1888, A. Lawson came for me to go to see plaintiff, and I sent Dr. Smith to attend him. On October 11, 1888, I sent Smith again. Question by same: State what, if anything, Dr. Smith told you plaintiff said to him (Smith) about coming back to see plaintiff on the visit of October 11, 1888. A. In the morning Dr. Smith told me that Lawson had discharged us—this was at my office, in Centreville, the morning after the visit—and that he wanted me to take a haystack on the bill."

The general rule is, where a party is competent to prove the motive and intentions which have governed his own conduct, he may state in general terms that he did or refrained from doing a thing on account of information received from third persons; but he can not go into details as to conversations with third persons, held not in the hearing of the opposite party.

In this case the witness could have stated that he refrained from paying another visit to the plaintiff, who was his patient, on account of information received from Dr. Smith, and this would have been competent. But the conversation itself, or the words of Dr. Smith, were incompetent. No injury can be perceived, however, inasmuch as Dr. Smith was himself called, and proved the conversation. 1 Greenl. Ev. § 124.

The third bill of exceptions embraces instruction No. 1 given for the defendant over the objection of the plaintiff. That instruction is as follows : "Instruction No. 1 : Gentlemen of the jury, it is claimed by the plaintiff that the defendant was employed to treat professionally, as a surgeon, his injured arm. ˙ By the defendant accepting the employment he bound himself to use in his treatment of the arm a reasonable, ordinary degree of care and skill of the profession in his community, but he did not undertake to use the highest degree of care and skill, nor, in the absence of a special agreement, did he undertake to perform a cure. Nor can you infer that the defendant was negligent simply because a cure was not effected. The burden of proving his case by a preponderance of the evidence rests upon the plaintiff."

This instruction is substantially correct. *Kuhn* v. *Brownfield*, 34 W. Va. 256 (12 S. E. Rep. 519.) The objection urged against it by counsel is that it uses the word "profession," instead of the more accurately descriptive term, "physicians in good standing." Perhaps the latter words would have been better, but I think we may say that the word "profession," used in this connection, is equivalent to "physicians and surgeons," and the qualifying words, "in good standing," are not generally inserted by the text writers. For example, Mr. McClelland defines the contract as follows : "The implied contract of a surgeon is not to cure, but to possess and employ in the treatment of a case such reasonable skill and diligence as are ordinarily exercised in his profession by thoroughly educated surgeons ; and, in judging of the degree of skill required, regard is to be had to the advanced state of the profession at the time." The author further adds the following qualifications : "Time and place must be taken into consideration. Reasonably, as much can not be expected of physicians in remote localities, where he is cut off from opportunities of improvement, as from physicians living in communities where opportunity is afforded of seeing disease and accidents under more varied forms ; nor from this latter class should as high a degree of attainments be exacted as from physicians connected with large hospitals, or who reside in

large cities. If it were otherwise, we should find but few
physicians except in populous communities. The very
favorable rule has been laid down in the law that the least
amount of skill, therefore, with which a fair proportion of
the practitioners of a given locality are endowed, is taken
as the criterion by which to judge the physician's ability or
skill." McClel. Mal. 18, 19.

In the case of *Smothers* v. *Hanks*, 34 Ia. 286, the rule is
laid down that the measure of skill and diligence "is that
ordinarily exercised in the profession by the members there-
of as a body; that is, the average of the reasonable skill
and diligence ordinarily exercised by the profession as a
whole."

The instruction is therefore, I think, couched in language
substantially correct, and not calculated to mislead the jury.

Instruction No. 2 was excepted to by the plaintiff for the
same reasons he urged against No. 1, and his objections
have already been answered. The same may be said of
instruction No. 3, which relates to the discharge of his
physicians by the plaintiff. That instruction is as follows:
"Instruction No. 3: If the jury find from the evidence that
the plaintiff, through Dr. W. A. Smith, on the 11th day of
October, 1888, discharged the defendant from the manage-
ment and treatment of his arm, and if you further find
from the evidence that prior to the 11th day of October, 1888,
the defendant and Dr. W. A. Smith exercised the ordinary
care, skill, and diligence of their profession in their com-
munity in the management and treatment of the arm, then
you must return a verdict for the defendant." All of the
authorities admit that the patient may at any time dis-
charge or dismiss his physician, and from that moment
such physician is relieved from responsibility. It would
be very strange if the law were otherwise.

The fourth instruction is as follows: "If the jury believe
from the evidence that the plaintiff, W. S. Lawson, by his
own negligence, directly contributed in any degree to the
injury sued for, they will find for the defendant." As an
abstract proposition of law, this instruction might perhaps
be correct; but, under the evidence set out in this record,
I am inclined to think it ought not to have been given,

except with modifications. Supposing the theory of the defence to have been correct—that the patient had dismissed his physician on the 11th day of October, and that subsequent to that date the patient was negligent. Would it be seriously contended that this neglect on his part would interfere with his right of recovery, provided he proved that the conduct and treatment of his physician up to the 11th October had been utterly unskillful, and totally careless and negligent? I think not, and therefore the instruction, in the form propounded, was calculated to mislead, and should not have been given. So, also, if the physician, at a certain period, wrongfully abandoned his patient, and left him to his fate, any subsequent neglect on the part of the patient would not prevent his recovery. In other words, the contributory negligence must be contemporaneous with the main fact charged as negligence, in order to prevent a recovery; and the instruction should have been so framed as to adapt it to the evidence, and to leave no room for misapprehension on the part of the jury.

The fifth instruction for the defendant is as follows: "Instruction No. 5: The jury are instructed that there is no issue in this case, for them to consider, as to whether Dr. Conaway or his agent abandoned the treatment of plaintiff's arm. The only issue is whether the defendant, Dr. Conaway, or his agent, Dr. Smith, failed to exercise the ordinary care and skill of their profession in their community while they treated the arm."

This instruction is plainly erroneous, and should not have been given. The charge in the amended declaration is that the defendant, after having been employed as physician and surgeon, entered upon the treatment and cure of the plaintiff, and so "carelessly, negligently, improperly, and unskillfully conducted himself in that behalf, and then and there so carelessly, negligently, improperly, and unskillfully applied his cure and treatment upon the said grievous hurts, broken bones, injuries, cuts, bruises, and fractures of the arm," etc., as to produce damage. The declaration further charges that injury resulted to the plaintiff "by means of the careless, negligent, improper, and unskillful attention" on the part of the defendant.

This, then, is the complaint and averment of the declaration; and it did charge and give full notice to the defendant that he was required to defend himself against a want of attention, which includes abandonment, almost as plainly as if that term had been used. Counsel have urged that abandonment was not charged in the declaration, and in support of their proposition cite us to the case of *Hawker* v. *Railroad Co.*, 15 W. Va. 628, and *Bemus* v. *Howard*, 3 Watts, 255.

In the first of these cases the declaration charged that the engineer on a railway train saw the plaintiff's stock, and, after seeing it, so negligently conducted his train, *etc.*, as to injure or kill it. Under this declaration, this Court refused to permit the plaintiff to prove that if the engineer did not see the stock it was his own fault and neglect, and that he ought to have seen it. Now, admitting this to be a correct decision (and I myself have always thought it too technical) that case has no application to the facts of the one we are now considering. In the latter the averments of the declaration do, by necessary implication, cover the charge of abandonment, as the equivalent of neglectful attention or want of attention. The language of the declaration carefully distinguishes between the unskillful treatment of the fracture and the negligent personal or professional conduct of the physician, and distinctly charges both species of negligence and carelessness.

The Pennsylvania case reported in 3 Watts, 255, to which we have been cited, is inapplicable, for the reason that, if it be correctly stated by the court, the declaration did not charge a want of attention on the part of the physician. At any rate, all we can say is that, if there is anything in that case contrary to the views herein expressed upon the pleadings and evidence in the present case, the former is manifestly wrong.

The ninth bill of exceptions embraces instruction No. 1, asked for by the plaintiff, which the court refused, and gave an instruction of its own in lieu thereof, against the objection of the plaintiff's counsel. The instruction asked for, and the modification, are as follows: "Instruction No. 1: The court instructs the jury that it was the duty of the

defendant, after entering upon the treatment of the plaintiff's fractured arm, to use all reasonable care and diligence in treating the injuries thereof, and that the plaintiff had a right to presume that the defendant had discharged his duty as such physician, and also had the right to rely upon the treatment, instructions, and directions given to him by the defendant."

To the giving of said instruction the defendant, by counsel, objected, which objection was sustained by the court; and the court, in lieu thereof, gave the following instruction, in the words and figures following, to wit: "No. 1: If the jury believe that defendant undertook the treatment of plaintiff's fractured arm as surgeon, it was his duty to bring to its treatment reasonable and ordinary care, skill, and diligence; and if the jury believe that the defendant failed to discharge such duty with ordinary skill and care and that the injury complained of resulted from such failure, without fault or negligence on the part of the plaintiff, which by ordinary care and prudence on his part could have been avoided, then defendant is liable."

It will be observed that the modified instruction given by the court has no relation to that asked for by the plaintiff, and totally omits all reference to the point of law upon which the plaintiff was insisting. The instruction, in form, is not hypothetical, but the hypothesis, if framed, could only have included a fact which seems to have been taken for granted, and may be considered as a concession upon all hands, viz: that the defendant did actually enter upon the treatment of the plaintiff's fractured arm. If the instruction had said that, if the jury found the defendant entered upon the treatment of the plaintiff's fractured arm, then the defendant was bound to use all reasonable care, *etc.*, and the plaintiff had a right to rely on instructions and directions, if any, given by the defendant, the proposition would have been correct, and the instruction unobjectionable in form.

I think there was no error in refusing the plaintiff's third instruction, because it fails to distinguish between the expenses and damages resulting from the original fracture and those consequent upon malpractice. Field, Dam. § 609; *Leighton* v. *Sargent*, 31 N. H. 119.

Before closing, it is perhaps necessary to define with more accuracy than we have yet done the implied contract between physician and patient, the violation of which on the part of the former constitutes malpractice.

When a physician is employed to attend upon a sick person, his employment continues while the sickness lasts, and the relation of physician and patient continues, unless it is put an end to by the assent of the parties, or is revoked by the express dismissal of the physician. The physician is bound to bestow such reasonable, ordinary care, skill, and diligence as physicians and surgeons in the same neighborhood, in the same general line of practice, ordinarily have and exercise in like cases. Time and locality are to be taken into the account, and the physician is bound to exercise the average degree of skill possessed by the profession in such localities. In the absence of special agreement, his engagement is to attend the case as long as it requires attention, unless he gives notice of his intention to discontinue his visits, or is dismissed by the patient, and he is bound to exercise reasonable and ordinary care and skill in determining when his attendance should cease. But his engagement is not to cure the patient, nor does he insure that his treatment will be successful. The mere failure to effect a cure does not even raise a presumption of a want of proper care, skill, and diligence. It is the duty of the patient to co-operate with the physician, and to conform to his prescriptions and directions, and if he neglect to do so he can not hold the physician responsible for the consequences of his own neglect. On the other hand, he has a right to rely upon the instructions and directions of his physician, and incurs no liability by doing so. McClel. Mal. 18, 19, 109; 14 Amer. & Eng. Ency. Law, 80, 82; 15 Amer. & Eng. Ency. Law, 439.

A feature in the case, yet to be noticed, is the fact that the plaintiff introduced a justice of the peace, who proved, substantially, that for his services in this behalf the defendant recovered a judgment against the plaintiff. The docket or record, if it may be called such, of said justice, was before the jury, but seems to have been omitted intentionally from the record here. It is claimed in this Court

by counsel for defendant in error that this judgment against the plaintiff below estopped him from prosecuting his cross action for malpractice. As the case will have to go back to the Circuit Court, we deem it our duty to decide this interesting question.

As a general rule, estoppel by a former judgment has to be introduced by a special plea of *res adjudicata.* No such plea was offered by the defendant in this case; but, on the other hand, the plaintiff himself introduced this record of the magistrate's court; and, if we had it before us, we should be able to decide whether the plaintiff had proved himself out of court—a privilege which he always has and, though his counsel, not unfrequently, though unwittingly, exercises.

The question involved is this: In a suit for malpractice, is the plaintiff estopped by a judgment in an action against him, brought by the physician, to recover compensation for services rendered in the same case. Upon this subject the decisions are much divided. In New York, in the leading case of *Gates* v. *Preston,* 41 N. Y. 113, and in *Bellinger* v. *Craigue,* 31 Barb. 534, the affirmative was held, and such has been the uniform current of decision in that State. *Blair* v. *Bartlett,* 75 N. Y. 150; *Dunham* v. *Bower,* 77 N. Y. 76. New Jersey, Arkansas, and perhaps other states, have followed the New York decision. *Ely* v. *Wilbur,* 49 N. J. Law, 685 (10 Atl. Rep. 385, 441); *Dale* v. *Lumber Co.,* 48 Ark. 188 (2 S. W. Rep. 703). Upon the other hand, in Indiana, Ohio, Wisconsin, and perhaps other states, a contrary doctrine has been held. *Goble* v. *Dillon,* 86 Ind. 327; *Sykes* v. *Bonner,* 1 Cin. R. 464; *Ressequie* v. *Byers,* 52 Wis. 650 (9 N. W. Rep. 779).

The dividing line between the New York decisions and those of the states which have taken a contrary view is upon the fact whether the judgment obtained by the physician was a judgment by default; for all the cases concede that if the patient has appeared, and defended the action on the ground of neglect or want of skill, the judgment against him is an estoppel, and he can not bring his cross-action for malpractice. But when the judgment is by default, and no defence whatever has been made, the majority of the cases would seem to hold that the question of mal-

practice or diligence and skill was not involved, and that the patient has not impaired his right of action by neglecting or refusing to appear to the suit against him.

Finding this contrariety of opinion in the courts of last resort, we naturally recur to the text-writers to ascertain how the scale ought to be adjusted, and what held to be the better opinion. But, instead of resolving our doubts, we find the conflict renewed with an energy almost acrimonious in its vigor. We find that Mr. Bigelow (1886) dissents from the New York descisions upon the ground that the right to sue for malpractice was a cross demand, and the defendant might elect to litigate it in the first suit, but if he declined to do so it was reserved to him for future action. On page 175 of Bigelow on Estoppel, he thus comments upon the New York decisions:

" Such an argument, however, like the view taken by the courts of New York, that the former judgment has shown that the services or property, according to the case, were of value, while the second suit declares or may declare the same to be worthless, is only plausible; for a judgment on default is not equivalent, in principle or on authority, to a judgment on an issue fought out. Judgment on default is good for the primary purpose of a judgment for plaintiff. It gives him the right to have the sum adjudged collected. But it has not the full effect of a *res judicata*, because in reality it has been *ex parte*. There is the best authority for saying that judgment by default does not conclude defences in confession and avoidance in a different action. And if the view here presented, that the cross demand is an independent cause of action, is correct, it can not matter that the former judgment was rendered upon an issue contested, if that issue did not embrace the cross demand."

Upon the other hand, Mr. Herman (1886) takes the opposite view, and denies that the action for malpractice can be, in strict legal sense, a counterclaim, and hence it can not, he argues, in the absence of statutory regulations, be the subject of an independent action. 1 Herm. Estop. § 235. In section 236 he states his argument, in earnest and vigorous language, as follows :

"Courts maintaining a doctrine contrary to that of *Gates* v. *Preston* do so, except where otherwise compelled by statute, by violating every principle on which the doctrine of *res adjudicata* is founded. Without citing again the long and unbroken line of cases which will be found in another portion of·this work, we may state the following as the substance of the decisions : *First*, the maxim, *interest reipublicæ ut sit finis litium*, has never yet been questioned ; and, *second*, whenever, a matter is adjudicated, such judgment decides every matter which pertains to that cause of action, or the defence set up, or which is involved in the measure of relief to which the cause of action or defence entitles the party, even though such matter may not be set forth in the pleadings so as to admit proof and call for an actual decision upon it. This principle prevails throughout the civilized world, with but few exceptions, and includes, not only what actually was determined, but also extends to every other matter which, under the issues, the parties might have litigated in the case—to everything within the knowledge of the parties which might have been set up as a ground of relief or defence. This principle is but the repeated reiteration of the maxim above cited, which is so deeply fixed in the law of fundamentals. This maintenance of this principle is one of the necessities in all civilized communities, and it has been handed down, from generation to generation, without ever being questioned, until the present time ; and we doubt whether there ever can be a so well established and universally sustained principle of law. A court that can not doubt, distinguish, or make an exception to a well-settled rule of law is among the impossibilities of this age. The case of *Gates* v. *Preston*, follows the universal rule above cited. In the early case of *Marriot* v. *Hampton*, 7 Term R. 269, it was held that where, in an action, a party had a complete defence, as payment, and failed to maintain it, he was concluded by that judgment, and, although he had the written receipt of the plaintiff, yet he was compelled to pay the same money twice. This principle has never been questioned. So a party having a defence like that of usury, limitation, coverture, a statutory right of exemption, or any defence which will defeat a plaintiff's claim, and fails to

set up such defence, can not thereafter relitigate matter which would have defeated the plaintiff's action in another cause between the same parties by simply reversing their positions as parties."

A later writer (1891) as umpire in the dispute between Herman and Bigelow, decides against the New York view, and supports the western cases as having the better reason (2 Black, Judgm. § 769).

, "Thus, where a physician sued a party for services rendered by him in treating a broken limb, and the defendant appeared and pleaded general denial, it was held that the fact of performance of plaintiff's contract was impliedly averred and denied by the pleadings, and that a judgment in favor of the plaintiff for the services as claimed necessarily included the fact of due performance by the plaintiff, and that the question of malpractice was involved in the issue, and concluded by the judgment, so that the patient could not thereafter sue upon that cause of action. And a similar rule has been applied in Massachusetts, though the services were of an entirely different nature, where defence was taken to the first action on the ground of negligence, but without seeking to recoup the damages. But these cases have been vigorously criticised and resolutely denied in decisions rendered in other states, which seem to us to be much better supported by legal reason and the best considerations of convenience and justice. This may be illustrated by the judgment in the case of *Ressequie* v. *Byers*, 52 Wis. 650 (9 N. W. Rep. 779) where, after an action was commenced for malpractice in attendance upon a certain case, defendant instituted a suit before a justice of the peace for the value of his services for such attendance, in which suit the defendant interposed a general denial as to the value of the services, but afterwards failed to appear at the trial, and judgment was given for the physician for the amount he claimed. It was held that such judgment was no defence to the action for malpractice, and a supplementary answer setting it up as a plea in bar was demurrable."

Amidst this great contrariety of opinion, we must draw our conclusions in conformity with the spirit of our own decisions, and according to the dictates of a sound adher-

ence to general principles. No court has insisted more strenuously epon the doctrine of *res judicata* than has our own. *Western M. & M. Co.* v. *Virginia C. C. Co.*, 10 W. Va. 250; *Henry* v. *Davis*, 13 W. Va. 230; *Corrothers* v. *Sargent*, 20 W. Va. 351; *Mason* v. *Bridge Co.*, Id. 223; *Wandling* v. *Straw*, 25 W. Va. 692; *McCoy* v. *McCoy*, 29 W. Va. 794 (2 S. E. Rep. 809); *Seabright* v. *Seabright*, 33 W. Va. 152 (10 S. E. Rep. 265); *Parsons* v. *Riley*, 33 W. Va. 464 (10 S. E. Rep. 806; *Sayre's Adm'r* v. *Harpold*, 33 W. Va. 553 (11 S. E. Rep. 16).

Nevertheless, I think a safe conclusion to be reached is that if the physician sue for compensation for his services, and there is no appearance by the patient, a recovery by the former does not estop the latter from bringing his cross action for malpractice; but if he appear (unless the record show that it was not to defend, but solely to disclaim the waiver of his own right) he is estopped by the recovery. The right to sue for malpractice is both a defence and a subject for cross action, and if used for either purpose— that is, either by way of defence or recoupment—it destroys the vitality of the claim, if sought to be used in an independent action; and, if the patient has appeared in the suit by the physician, he was bound to make all the defences he had, and hence he is estopped by the fact that he had a defence of malpractice, of which he failed to avail himself. But, if he has not appeared, then the question of malpractice has never been adjudicated, and he is at liberty to assert his claim by an independent action.

For the reasons stated, the judgment of the Circuit Court must be reversed, the cause remanded, the verdict set aside, and a *renire de novo* awarded, and in the new trial the Circuit Court will conduct its proceeding in accordance with the principles herein announced.

HOLT, JUDGE (dissenting):

We still retain the common-law system of pleading, though greatly modified, and the well-known common-law classification of personal actions into actions *ex contractu* and *ex delicto* is still kept up. In fact, the classification must be a somewhat natural one, for we see it carefully ob-

served under the modern systems of Code pleading. Even the substantive law itself, treating of correlative civil rights and duties, is now classified and discussed, for the most part, under the general heads of contracts and torts. It is fair, therefore, to conclude that the distinctions which have led to this classification, in both the substantive and objective law, are founded somewhat in the nature of the things themselves, or have been found to be useful and convenient in practice, and so should not be lightly disregarded and confounded; for system depends upon science, and science upon classification.

This was a common-law action of trespass on the case, in tort, brought by the plaintiff, Lawson, against defendant, Conaway, to recover damages for malpractice in treating a fracture of plaintiff's arm, with damages laid at ten thousand dollars. The case was tried on a plea of not guilty, and no other, and the jury found in favor of defendant.

During the trial it came out in evidence on plaintiff's side that Dr. Conaway had sued the plaintiff before a justice for his services in treating the plaintiff's arm, and had recovered a judgment for eighteen dollars, to show, I suppose, that defendant had collected his fee. Counsel for the defendant, Dr. Conaway, contend that when the doctor sued for his bill there was involved in that the very question which was passed upon by the jury in the case at law, citing as authority for such contention *Ely* v. *Wilbur*, 49 N. J. Law, 685 (10 Atl. Rep. 385, 441); *Dale* v. *Lumber Co.*, 48 Ark. 188 (2 S. W. Rep. 703); *Bellinger Craigue*, 31 Barb. 534; *Blair* v. *Bartlett*, 75 N. Y. 150.

I think it could be shown that the weight of authority is the other way, under Code practice, as well as at common-law. I understand our law upon the subject, apart from chapter 50 of the Code, to be as follows: The malpractice described in plaintiff's declaration is a common-law tort, and properly made the subject of an action in case. But because it is a tort which results from a breach of duty, and relating to and directly growing out of the services of Dr. Conaway as a surgeon, for which service Lawson had agreed expressly or impliedly to pay, it may, at Lawson's option, be filed as a recoupment against the surgeon's suit for his services. But Lawson is not compelled to put it in,

by way of recoupment or counterclaim, on pain of being thereafter barred by the judgment in the action for such services.

Our practice is to leave this to the choice of Lawson, so that he may act upon such considerations of fitness, convenience, and the like, as the circumstances of his case may dictate, in regard to the time and the mode of enforcing his claim for damages; and no better illustration can be given of the fitness of leaving to him such choice than the case in hand, for in this State the jurisdiction of a justice, though large, is special, and limited to three hundred dollars, while the plaintiff's account for eighteen dollars could not be sued for in the courts of general jurisdiction, because too small. The patient's claim could not be recovered before a justice, though fully proved, because too large. See sections 52, 56, c. 50, Code, where it is perhaps included under the term "Counterclaim," but the option is given to sue for the whole amount in any court having jurisdiction.

If the plaintiff, Lawson, had appeared before the justice, and filed his claim for ten thousand dollars for malpractice as a counterclaim in defence or reduction of the doctor's claim of eighteen dollars for his services, and eighteen dollars had been thus used, it is by no means clear that he could afterwards have sued for the excess.

But this involved questions that I do not care now to discuss; for if Lawson's demand for ten thousand dollars is a counterclaim, within the meaning of the term as used in section 55 of chapter 50, then the option is given him to sue for the whole amount in any court having jurisdiction, and so he would not be precluded from maintaining this action *ex delicto*, although, when sued by Dr. Conaway, before the justice, for eighteen dollars, he appeared and otherwise answered the action, yet did not produce his claim for the ten thousand dollars, with his evidence in support thereof.

For these reasons, I am constrained to dissent from the doctrine laid done in point No. 4 of the head notes, especially as I do not regard such question of *res judicata* as fairly arising on this record.

REVERSED.   REMANDED.