## P. A. NELSON, AS FATHER OF AND FOR THE BENEFIT OF ISABEL NELSON, A MINOR v. ROBERT C. FARRISH AND ANOTHER.[1]

August 1, 1919.

No. 21,245.

**Physician and surgeon — malpractice — charge to jury.**

1. Action for malpractice in treatment of a child afflicted with osteomyelitis in the radius. It appears that the proper treatment was by operation. The court instructed the jury that, if defendants made a correct diagnosis and advised an operation and it was refused, defendants were not liable, that if they failed to diagnose and treat the child with reasonable skill, and such failure resulted in injury, they were liable for damages. Under the evidence the instruction was proper. The question whether plaintiff had proven that a better result would have followed an operation was in the case. The evidence is such as to sustain a verdict for defendants.

**Liability of physician called only on particular occasions.**

2. A physician, if called generally, must give continued attention as the condition of the patient requires; if called only for an occasion, he owes no duty to repeat his visit or continue his treatment. The evidence shows that defendant Portmann was called for particular occasions only. This did not affect his liability for what occurred on the occasions of his visits, but concerned only the question whether he owed a duty to give continued attendance. He was not liable for what was done by others during his absence.

**Evidence of malpractice insufficient.**

3. The evidence produced was insufficient to make a case for the jury as to malpractice in the manipulation of the arm.

**Appeal and error — exclusion of evidence insufficient for reversal.**

4. The rejection of evidence will not warrant a reversal, unless its

[1]Reported in 173 N. W. 715.

admission might reasonably have resulted in a different verdict. **The exclusion of certain evidence in this case was not reversible error.**

**Liability of defendant for son's acts immaterial.**

5. Defendant Portmann's son treated the child on occasions and performed an operation. There is no claim of malpractice on his part, and it is immaterial whether defendant Portmann was answerable for his acts.

**Assignments of error.**

6. Other assignments of error are considered and *held* to present no ground for reversal.

Action in the district court for Martin county to recover $20,000 for malpractice. The separate answers alleged negligence on the part of the minor and her parents, and that their negligence contributed to and caused any disease with which the minor suffered. The case was tried before Tifft, J., who when plaintiff rested denied defendant Farrish's motion to dismiss the action as to him, and a jury which returned a verdict in favor of defendants. From the order denying his motion for a new trial, plaintiff appealed. Affirmed.

*Wilson Borst, Albert R. Allen* and *Leo J. Seifert,* for appellant.

*Dunn & Carlson, Knox & Faber* and *Moore, Oppenheimer & Peterson,* for respondents.

HALLAM, J.

Plaintiff sues as father of Isabel Nelson, 8 years old, for malpractice. Plaintiff resides at Sherburn. On November 11, 1915, Isabel was suffering from osteomyelitis in the radius, a disease of the marrow of the bone. On the twelfth defendant Farrish, a physician of Sherburn, was called to treat the case and he continued to treat it until December 3. The disease grew worse. On November 18, defendant Portmann, a physician of Jackson and former family physician, was called. He attended with Dr. Farrish, examined the arm, and gave directions as to treatment. He did not take full charge of the case, was apparently not expected to return unless called, and, when he left, gave directions that if they "needed him any more to call him." On the twenty-second Dr. Portmann was called again. He came. Dr. Farrish also was present. Dr. Portmann gave some directions as to treatment, but did not come again,

143—M. 24

and apparently was not expected to come without being called. Dr. Farrish continued to treat the arm. It continued to grow worse and on December 2 Dr. Portmann was again sent for. He was not at home, and, instead, his son Dr. U. V. Portmann came. On December 3 he took the child to a hospital at Jackson, where he and defendant Portmann performed an operation the next day. Dr. Farrish's employment then ceased. In January the parents took the child to St. Joseph's Hospital in St. Paul. There, Dr. Schwyzer performed an operation in the presence of defendant Portmann, and found it necessary to remove the radius, and this was done.

1. It is conceded by all that the proper treatment for osteomyelitis is by operation, consisting in opening the shaft of the bone and affording drainage of the pus and removal of diseased tissue. The charge of plaintiff is that the defendants did not advise or suggest this treatment, that if this had been resorted to promptly the arm would have been saved, but that defendants did not correctly diagnose the case until the disease had progressed so far that the bone was beyond treatment and the use of the arm virtually lost. Defendants contend that they did promptly diagnose the disease and advised the parents of its true nature, and seasonably advised operative relief, and that the parents objected to any operation, until it was too late to save the arm. On this question the evidence was squarely in conflict.

The court instructed the jury that, if the defendants within a reasonable time made a correct diagnosis and clearly advised the parents of the nature of the ailment, and the importance of an immediate surgical operation, and of the result likely to follow a refusal, and that the parents refused to permit such an operation, their verdict should be for defendants, that if they failed to diagnose and treat the child with reasonable and ordinary skill and such failure resulted in the injury complained of, then defendants were liable for damages. We find no error in this instruction. Getchell v. Hill, 21 Minn. 464.

The court further instructed the jury that "the burden is upon the plaintiff to prove by a fair preponderance of the evidence that, notwithstanding an incorrect diagnosis and failure to advise the proper treatment, a different result would have followed, and there would have been a better recovery, if there had been an operation within a reasonable time." Plaintiff's counsel contend that the only defense is that the par-

ents refused to allow the defendants to operate and that it is conceded that an operation would have resulted in a good arm. It is true the doctors claimed that they correctly diagnosed the case, and advised an operation, and that the parents refused, and most of the evidence is devoted to those propositions, and it is true the attorney for defendant Portmann, in his brief in this court, ventures the assumption that an operation would have resulted in a good and usable arm. We are of the opinion, however, that the question whether plaintiff had proven that a better result would have followed an operation, was in the case, and that the court correctly charged the jury on this point. The jury found for defendants. We have examined the voluminous record with much care, and we are of the opinion that there was evidence sufficient to sustain the finding of the jury.

2. A number of other questions are raised. In fact there are 52 assignments of error.

Plaintiff contends that defendant Portmann was employed generally to diagnose, treat and cure, and complains that the court instructed the jury that he was called in consultation with Dr. Farrish. Under the evidence we think the court's ruling was right. However, as far as concerns his liability for what occurred on the occasion of his visits, it is not very material in which capacity he was called. He was called as a physician and surgeon to diagnose the disease and prescribe or direct treatment for its cure, regardless of what Dr. Farrish had done. While he was there he owed the duty to employ reasonable professional skill. Walker v. Holbrook, 130 Minn. 106, 153 N. W. 305. The court did not rule or instruct otherwise. There is no claim on his behalf that he had not ample opportunity to correctly diagnose the disease. He claims he did do so and advised the family of his diagnosis. In this connection it is pertinent to observe that there is no question but that Dr. Farrish's employment was general. Since the jury found in his favor, it is difficult to see how they could have found otherwise as to Dr. Portmann, whether his employment was general or as a consultant. In no possible view of the case could it be said that the obligation or liability of Dr. Portmann was greater than that of Dr. Farrish.

The difference between general and special employment relates mainly to the obligation of the physician to continue his attention. If called generally he must give such continued attention and attendance as the

condition of the patient requires.  Ballou v. Prescott, 64 Me. 305; Lawson v. Conaway, 37 W. Va. 159, 16 S. E. 564, 18 L.R.A. 627, 38 Am. St. 17; 30 Cyc. 1573.  But if called specially and only for the occasion, he owes no duty to repeat his visits or continue his treatment.  We think the effect of the testimony of plaintiff's witness is that it was not expected that defendant Portmann would return,·except when called, and that he owed· no duty to do so, and that the court properly instructed the jury that he could only be held liable for such damages as resulted from his connection with the case on the occasion of his visits of November 18 and November 20.  There is no evidence of malpractice at either of the operations later performed, at which defendant Portmann was present. Nor is there anything in the case to indicate that defendant Portmann was employed to supervise or direct defendant Farrish in his absence, and the court properly instructed the jury that he is not liable for what Dr. Farrish did or omitted to do in his absence.

3.  Two days after he was first called, Dr. Farrish, for purposes of diagnosis, put the child under an anaesthetic and manipulated the arm. Plaintiff claims that up to that time the child had the use of the arm, that afterwards the arm grew worse, she could not use the arm, and it became swollen and discolored.  Plaintiff claims also that, in the manipulations, Dr. Farrish broke the bone.  The only evidence of fracture is that at the time of the operation at Jackson, one of the family present saw that the bone was "broken," as he stated it, near the wrist.  The court excluded this evidence from the consideration of the jury.  We are of the opinion that this evidence was not sufficient to show that Dr. Farrish fractured the arm.  Undoubtedly during the progress of the disease the bone became "eaten loose or rotted loose at both ends" so that it was finally, at the operation at ·St. Paul, taken out with pincers. To a lay witness it might have the appearance of a bone broken off, but we think there was no competent evidence that the bone was broken by Dr. Farrish's manipulations.  There may be more question whether the manipulation was too severe and caused the arm to swell and discolor, but we think the evidence is insufficient to make out a case of malpractice in this particular.

4.  When plaintiff was testifying he stated that after the operation at Jackson Dr. Portmann said to him "that the arm was a hundred times worse than he ever looked for, and he said he damned himself a thou-

sand times over that he didn't take that girl in his own hands the time —the first time he was there to the house." This was stricken out. Plaintiff claims it was proper evidence as an admission by Dr. Portmann of his own lack of skill and of his negligence. The evidence might properly enough have been allowed to stand. But the meaning of the language is so doubtful that we think its exclusion was not reversible error. Counsel for defendant Portmann argues that the statement, if made at all, meant that he should have overridden the objection of the parents to an operation, and this seems to us its most plausible meaning. He could hardly have meant that he should have taken her from the charge of Dr. Farrish, for there is no suggestion that Dr. Farrish did not accept and follow his advice. On the contrary, the evidence, so far as it bears on that point at all, shows that Dr. Farrish followed the treatment outlined by Dr. Portmann.

Dr. Portmann was asked on cross-examination whether he ever made any claim that either he or Dr. Farrish had advised an operation, which was refused and why he did not make such a claim on an occasion when plaintiff and his attorney called on him. This might properly have been admitted as impeachment of his testimony that he had given such advice, but it does not seem to us of such importance that its rejection should warrant a reversal. The rejection of evidence will not warrant a reversal, unless its admission might reasonably have resulted in a different verdict. Barnes v. Spencer, 113 Minn. 101, 129 N. W. 140; Svensson v. Lindgren, 124 Minn. 386, 389, 145 N. W. 116, Ann. Cas. 1915B, 734. See G. S. 1913, § 7789.

5. There is some claim that defendant Portmann should be held liable for the acts of Dr. U. V. Portmann, his son. The evidence is that the elder Portmann was called December 2, but that, because he was absent, his son responded to the call. Whether the father was responsible for the acts or omissions of the son is not important, for there is no evidence of malpractice on the part of the son. He took the child to Jackson, and, with his father, performed an operation. Plaintiff's counsel on the trial expressly disclaimed that there was "anything wrong in the operation itself." Nor is any showing made of "anything wrong" in anything that the son did or omitted to do at any time.

6. There are many other assignments of error that do not require particular discussion. Some relate to the exclusion of evidence that

was not important. Some relate to evidence which was repetition of evidence in the records. Some relate to the exclusion of evidence the nature of which does not appear because of the absence of offer of proof. We have examined all and do not find substantial error.

Order affirmed.