Wytheville.

HUNTER V. BURROUGHS.

June 13, 1918.

Absent, Burks, J.

1. PHYSICIANS AND SURGEONS—*Malpractice*—*Sufficiency of Declaration.*—A count in a declaration in an action for malpractice charged that the defendant who treated the plaintiff with X-rays did not possess and apply sufficient knowledge and experience to anticipate and foresee the probable effect which the application of the X-ray treatment upon plaintiff's legs would produce, and to apply reasonably proper remedies, after using the X-ray treatment, to prevent plaintiff's flesh from being burned, but failed to anticipate the probable effect of the X-ray treatment and failed to apply reasonably proper and appropriate medicines, preventatives and remedies, after the treatment to prevent plaintiff's flesh and skin from being burned.

*Held:* That the count contained allegations of fact which sharply and distinctly raised the issue whether the defendant was professionally unskilful and negligent, and was sufficient.

2. PHYSICIANS AND SURGEONS—*Malpractice*—*Sufficiency of Declaration.*—It was contended that the count referred to in the preceding headnote was defective because it did not state what were reasonably proper and appropriate medicines, preventatives and remedies which should have been used.

*Held:* That the issues of fact raised by the count, in so far as they involved the highly specialized art of treatment of the disease of the plaintiff by X-rays, were to be decided, if they could be decided at all, only by the standard fixed by such evidence as might be furnished by experts on the subject. The plaintiff, a layman, could not have had knowledge of what specific "prescriptions, medicines and remedies" a physician of ordinary competency should not have failed to apply, whereas the defendant, if he possessed ordinary competency, upon the charges of professional unskilfulness in the treatment, should have known at once how to defend himself against such charges, by his own testimony and by the testimony of other experts on the subject.

3. DECLARATION—*Sufficiency.*—Where the allegations of a declaration are sufficient to inform the defendant of the nature and character of the demand against him and state such facts as would , enable the court to say, if the facts are proved as alleged, whether they establish a good cause of action, the declaration is good upon demurrer. Allegations in a declaration, which go beyond these requirements by descending into statements of details of proof, are unnecessary.

4. BILL OF PARTICULARS.—If a declaration gives the defendant partial but not complete notice of the nature and character of the plaintiff's claim, a bill of particulars may be required of the latter.

5. PHYSICIANS AND SURGEONS—*Malpractice—Declaration.*—In an action for malpractice, whether this or that specific prescription, medicine or remedy should have been applied or not applied was a mere matter of evidence upon the issue of fact on the allegations of unskilfulness and negligence made by the declaration. To require the declaration to allege such details of evidence would be to depart from the rule established in Virginia on this subject.

6. PHYSICIANS AND SURGEONS—*Malpractice—Declaration—Surplusage.*—A count in a declaration in an action for malpractice charged in general terms that the defendant was unskilful and negligent, and among the allegations of fact constituting such unskilfulness and negligence was an allegation that the defendant did prescribe wholly improper and hurtful medicines, "being two certain salves, which were prescribed by and are known to him," which were wholly unsuited to defendant's condition.

*Held:* That the count was good upon demurrer, and would have been good if the part quoted had been omitted, as it was an allegation of a matter of evidence and might be considered as surplusage. Further, as an allegation of fact it was sufficient to inform the defendant of the nature and character of the two salves, since it is alleged that they "were prescribed by and were known to him." This prevented his being taken by surprise by proof of his having prescribed such two salves.

7. APPEAL AND ERROR—*Demurrer—Specifically Stating Grounds of Demurrer.*—Where the objections on demurrer to certain counts in the declaration do not appear from the record to have been made in the court below by being specifically stated in the grounds of demurrer, but it does not appear from the record that any motion was there made by the plaintiff to require or that the °court on its. own motion required the grounds of demurrer relied on to be stated (section 3271, Code of 1904), and no objection is made by the plaintiff to

the consideration of the assignments of error by the Supreme Court of Appeals, such assignments will be considered by that court.

8. PHYSICIANS AND SURGEONS—*Malpractice—Declaration.*—A count in a declaration in an action for malpractice alleged that defendant was negligent in treating plaintiff with X-rays, without first making a preliminary examination to determine plaintiff's susceptibility to the influence of X-rays, as in the exercise of ordinary care it was his duty to make. It was objected to this count that it was fatally defective in that it did not allege that other specialists would not have been guilty of such omission.

*Held:* That such allegation was in substance and effect contained in the allegations of the count as it stood, and the failure of the count to contain such express allegation did not deprive the defendant of his right to require the same character of proof on the subject as he was entitled to require if such express allegation had been contained in the count.

9. PHYSICIANS AND SURGEONS—*Malpractice—Declaration.*—A count in a declaration in an action for malpractice alleged that defendant was negligent in treating plaintiff with X-rays, without first making a preliminary examination to determine plaintiff's susceptibility to the influence of X-rays, as in the exercise of ordinary care it was his duty to make.

*Held:* That this count was not demurrable, because it did not allege in detail what test and examination should have been made of the plaintiff before the application of the X-ray, as the details as to whether this or that particular test and examination should have been made, were mere matters of evidence.

10. PHYSICIANS AND SURGEONS—*Malpractice—Declaration—Appeal and Error—Harmless Error.*—A count in a declaration in an action for malpractice alleged that defendant was negligent in treating plaintiff with X-rays, without first making a preliminary examination to determine plaintiff's susceptibility to the influence of X-rays, as in the exercise of ordinary care it was his duty to make. It was objected that this count was demurrable because it failed to allege, except inferentially, that the plaintiff was in fact more susceptible to the influence of X-rays than other persons, and if such examination had been made it would have resulted in the discovery of such susceptibility.

*Held:* That the point was well taken; that such allegation should have been made and distinctly made, with definiteness and certainty. An inferential allegation of such material fact was insufficient. But as the case did not turn upon the exist-

ence of any peculiar susceptibility of the plaintiff to X-rays, and the verdict was based upon other grounds, the error was harmless.

11. PHYSICIANS AND SURGEONS—*Duty to Warn Patient.*—It is not *per se* an act of negligence for a physician to fail to warn a patient of the danger of the possible bad consequences of using a remedy.

12. PHYSICIANS AND SURGEONS—*Malpractice—Promise of Cure.*—A count in a declaration alleged that the plaintiff consulted defendant, a physician, regarding eczema and as to the proper treatment thereof; that the defendant knew, or should have known, of the danger of X-ray treatment in such case and misled the plaintiff by not only giving him no warning, but by affirmatively assuring him that the X-ray treatment would cure him. The count also alleged that had defendant given plaintiff warning of the danger of the X-ray treatment he would not have submitted to the treatment.

*Held:* That the count stated a good cause of action against the defendant for giving, not a mere opinion, but the positive assurance of cure alleged.

13. PHYSICIANS AND SURGEONS—*Malpractice—Joinder of Causes of Action.*—It was contended that the count referred to in the preceding syllabus was sounded in contract and not in tort and could not be united with other counts in tort.

*Held:* That the count was unmistakably in tort.

14. PLEADING—*Declaration—Tort or Contract.*—There is no question of a plaintiff's right to waive a contract and sue in tort for damages for breach of contract.

15. PHYSICIANS AND SURGEONS—*Malpractice—Result of Treatment as Evidence.*—In an action for malpractice it was objected to certain instructions that thereby the jury were allowed to give some weight to the result of the treatment along with all the other facts and circumstances proven in the case, in determining whether the defendant possessed and used proper professional skill, whereas defendant contended that no weight whatever, however slight, could properly be given to a bad result as evidence of the unskilfulness, or of the negligence of defendant.

*Held:* That defendant's position was untenable. While it is true that the result, however bad, is, *of itself alone,* insufficient evidence to establish the unskilfulness or the negligence of a physician in such a case as that at bar, yet it is not true that no weight whatever, "however slight," can be given to a bad result in such a case.

16. APPEAL AND ERROR—*Conflicting Evidence.*—In considering an assignment of error that the trial court erred in its refusal to

set aside the verdict and grant the defendant a new trial, the Supreme Court of Appeals cannot enter upon any attempt to reconcile the conflicts in the evidence, its sole function being to determine whether the record discloses sufficient evidence of probative value to support the verdict, if such evidence was found credible by the jury.

17. PHYSICIANS AND SURGEONS—*Malpractice—Expert and Opinion Evidence.*—In an action for malpractice, the standards of professional skill and care by which the evidence as to the competency and the conduct of the defendant was to be measured, involved the highly specialized art of the treatment of eczema by X-rays, and in so far as they did so, expert testimony before the jury fixing such standards was essential to the support of the verdict of the jury; since otherwise the jury, to the extent of the questions involving such specialized art, would have had no standard in mind by which to measure the other facts proven in the case.

18. PHYSICIANS AND SURGEONS—*Malpractice—Sufficiency of Evidence.*—In an action for malpractice plaintiff is not required to exclude by his proof the possibility of the result complained of having been due to causes for which the defendant was not responsible. If there is sufficient evidence, the credibility and weight of which is for the jury, tending to show that the bad result was more probably due to lack of skill or negligence of the defendant, it is enough.

19. PHYSICIANS AND SURGEONS—*Malpractice—Sufficiency of Evidence.*—If the proof leaves it equally probable that the bad result complained of may have been due to a cause or causes for which the defendant was not responsible, as to a cause or causes for which he was responsible, the plaintiff cannot recover.

20. EXPERT AND OPINION EVIDENCE—*X-Ray—Who is an Expert.*—A general practitioner of exceptionally high standing in his profession, who had used the X-ray to make photographs, but had never used it curatively, who had had personal experience and knowledge of ulcers caused by X-rays, and from his professional training and reading of scientific books treating of X-rays and the results of their curative use, had a certain degree of knowledge on the subject of the proper curative use of X-rays, which he disclosed to the jury, is qualified to testify on the subject of the general professional standard of skill and care requisite in giving X-ray treatments.

21. VARIANCE—*Larger Proof may Include the Smaller.*—It does not follow because testimony exceeds in its effect what it is incumbent on the party introducing it to prove, that it is inadmissible, or does not tend to prove a lesser issue of fact. The

larger proof may include proof of the lesser issue of fact; as, if it were elleged that A did not injure B in a certain per-sonal encounter between them at a certain time and place, and the proof should be that no personal encounter ever oc-curred between A and B. So in the instant case the allega-tion of the declaration was not that for the defendant to pre-scribe and apply any X-ray treatment whatever for the eczema of plaintiff was malpractice; but only that to pre-scribe and apply a certain X-ray treatment which was in fact applied was malpractice. But proof of the former would necessarily include proof of the latter fact.

Error to a judgment of the Court of Law and Chancery of city of Norfolk, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

This is an action of trespass on the case by the defendant in error, plaintiff in the court below (hereinafter referred to as plaintiff), against the plaintiff in error (hereinafter referred to as defendant) for damages alleged to have been occasioned to the plaintiff by malpractice of the defendant, a physician, in and about the diagnosis of the disease of eczema with which the legs and ankles of the plaintiff were affected, the treatment thereof with X-rays by means of a certain electrical instrument or appliance; the lack of proper treatment and the treatment thereof with salves, etc.

The amended declaration (which alone need be consid-ered) contains six counts. The malpractice alleged in the several counts, briefly stated, was as follows:

(a) In the *first count* it is alleged that the defendant "*did not possess and use reasonably sufficient knowledge and experience as to the nature and character of the said eczema* to enable him to prescribe and apply the treatment and remedies which the same reasonably required; and by

reason thereof *did prescribe and employ an X-ray or X-ray treatment therefor,* which was *wholly improper, inappropriate* and *hurtful in the treatment of the said eczema with which his, the said plaintiff's legs and ankles were affected, in that,* in so treating the same for the plaintiff, he, the *defendant,* subjected them to the influence of certain rays of light, so produced by an electric current, *which was too powerful for proper use on that occasion;* and did place and apply such electrical instrument or appliance too close to the plaintiff's said legs and ankles; and did subject the plaintiff's said legs and ankles to the influence of said X-rays produced by said instrument or appliance for an unreasonably long time and did subject the plaintiff's said legs and ankles to the influence of said X-rays too often, in each of which particulars *the said X-rays or X-ray treatment,* which the said defendant used and employed, *was wholly improper, inappropriate and hurtful* for the treatment of the eczema with which the plaintiff's said legs and ankles were affected." (Italics supplied.)

(b) In the *second count* it is alleged that the defendant *carelessly and negligently failed to exercise due and reasonable care and skill,* such as the nature of the plaintiff's disease and the character and nature of the instrument and appliance which was used by the defendant in administering the said X-ray or X-ray treatment to the plaintiff's said legs and ankles reasonably required, in this, to-wit: That he *did carelessly and negligently subject them* to the influence of certain rays of light so produced by an electric current which was too powerful for proper use on that occasion, and *did carelessly* and negligently place and apply such * * * X-rays * * * "*so* produced" * * *, and "by reason of each of the said acts and conduct on the part of the defendant, the said treatment *so administered,* became and was dangerous when used and applied to the plaintiff's said legs and ankles * * * and * * * was wholly im-

proper, inappropriate and hurtful for the treatment of the eczema with which the plaintiff's said legs and ankles were affected." (Italics supplied.)

(c) In the *third count* it is alleged that the defendant *"did not possess and apply reasonably sufficient knowledge and experience, care* and *skill to anticipate* and *foresee the probable effect* which the application of the said X-ray or X-ray treatment as used by him upon the plaintiff's legs and ankles would produce, *and to apply* reasonably proper and appropriate *prescriptions, medicines* and *remedies thereto, after using the same* as aforesaid, in order to prevent them from being burned, and the flesh and skin to which said X-ray was so applied from being destroyed, and in order to prevent ulcers, sores and other injuries from resulting therefrom; but, on the contrary, *by reason thereof,* did *fail to* reasonably *anticipate and foresee the probable effect which the said X-ray or X-ray treatment* as used and employed by him upon the plaintiff's legs and ankles *would produce,* and, by *reason thereof,* did *fail to apply* reasonably *proper* and *appropriate medicines, preventatives* and *remedies* thereto, *after the same had been used and employed by him,* to prevent the skin and flesh to which the said X-ray or X-ray treatment was so applied by the defendant, from being destroyed, and to prevent ulcers, sores and other injuries resulting therefrom." (Italics supplied.)

(d) In the *fourth count,* in addition to the charges that the defendant *did not possess* and *use* reasonable knowledge, experience, care and skill in recognizing and understanding *the effect* which the said X-ray or X-ray treatment *had produced,* and by reason thereof *failed* to prescribe and use such reasonably proper and appropriate medicines and remedies as from time to time their condition required, the allegation is added that, by reason of such lack of possession and use of such knowledge, experience, care and skill, the defendant *"did prescribe* from time to time *wholly im-*

*proper, inappropriate* and *hurtful* medicines and so-called remedies, *being two certain salves, which were prescribed by and are known to him,* each of which were wholly unsuited to the condition of the plaintiff's said legs and ankles, but, on the contrary, were calculated to produce and did produce further injuries thereto." (Italics supplied.)

(e) In the *fifth count* it is alleged "that the blood, skin and flesh of some persons are more susceptible to the influence of the X-ray than are the blood, skin and flesh of other persons, and the same treatment for the same disease will affect some persons beneficially, while other persons will be greatly burned and injured thereby. Wherefore, in the use and application of the said X-ray treatment, there are required special and peculiar knowledge and experience as to when such treatment is proper, and as to the manner of using the said instrument or appliance when the same is used; and that special and peculiar care and skill are required in applying and using it, in order to successfully operate and apply the same; and peculiar and special knowledge as to the effect of the application and use of the said electrical treatment or appliance and as to the proper treatment of the plaintiff after the application thereof, are required, and to that end in the exercise of ordinary care it became the defendant's duty to make careful preliminary tests and examination of the physicial condition of the patient, and the parts to be treated before applying the X-ray treatment thereto, in order to ascertain their susceptibility to its influence, and to determine the correct treatment therefor, and to successfully prevent injurious, instead of beneficial, results from its use; and unless such knowledge and experience, care and skill *are employed* in the use and application thereof, and unless the physician using the same *has made such preliminary tests and examination* and acquired such peculiar and special knowledge and experience as to the effect which said treatment

will probably produce upon the patient, and *unless such · peculiar knowledge and experience, care and skill are employed* in applying said treatment, there is great danger and strong probability that the parts of the patient's body to which the same is applied will become so burned and affected that the skin and flesh will be destroyed, and great sores, ulcers and disease will result therefrom, all of which (by the exercise of ordinary care and skill on his part) was known, or should have been known to the defendant, and that the defendant "did carelessly and negligently *fail* and *neglect* to *make such a test* or *examination as in the exercise of ordinary care it was his duty to make* of his said legs and ankles before applying the said X-ray treatment thereto, in order to ascertain their susceptibility to its influence and to determine the correct treatment thereof, and to successfully prevent injurious instead of beneficial results from its use, but did carelessly and negligently subject them to the influence of certain rays of light so produced by an electric current which were unsuited and in-. appropriate as a remedy for the plaintiff's said legs and ankles *in their then condition,* and did, in view of the condition of the plaintiff's skin, flesh and blood *at that time,* and *their susceptibility to the influence of said X-ray treatment,* carelessly and negligently place and apply said electrical instrument or appliance so close to the said plaintiff's said legs and ankles and did subject them to the influence of said X-ray so produced by said instrument or appliance for an unreasonably long time, and did subject them to the influence of said X-rays too long."     (Italics supplied.)

(f)   In the *sixth count* it is alleged that the plaintiff consulted the said defendant as a physician *regarding said eczema and as to the proper treatment therefor;* * * * that thereupon it became and was the duty of the defendant to possess and use reasonable knowledge, experience, care and skill in recognizing and understanding the effect which

the remedies and treatment prescribed and used by him would probably produce." This count then makes the same allegation as the fifth count as to some persons being more susceptible to the influence of X-rays than others, and alleges that by reason of which "there is great danger that as a result of the use of the X-ray treatment unforeseen injuries will be sustained thereby, and that the parts of the patient's body to which the same are applied will become so burned and affected that the skin and flesh will be destroyed and great sores, ulcers and disease will result therefrom, *all of which was well known, or should have been well known to the defendant;*" and further alleges that the foregoing being true, thereupon, "in the exercise of ordinary care, it became and was the duty of the defendant *to make known to the said plaintiff the danger aforesaid* and *not to mislead him;*" * * * "that *had the defendant made known to him* (the plaintiff) *the effect aforesaid, and that such injuries might result therefrom,* he would *not have permitted the treatment to be applied* to his said legs and ankles, and the injuries hereinafter complained of would not have occurred;" that "yet, the said defendant * * * did carelessly and negligently *fail* and *neglect to make known to the plaintiff the nature* and *character of the said X-ray treatment in such cases and the uncertainty which existed as to the result thereof* and *the danger of the injuries which might be caused thereby,* in order that he might determine whether he would permit his said legs and ankles to be subjected thereto, but, on the contrary, *assured the plaintiff that the said X-ray treatment would be beneficial* to his said legs and ankles, *and that* if he applied the same thereto *his said eczema would be cured* and his legs and ankles *would be well within a short time, to-wit, eight weeks.* And *without giving the plaintiff any notice or warning* of the said uncertainties and dangers which attended such treatment, did carelessly and negligently subject them to the influence of

said rays of light * * * which were unsuited and inappropriate as a remedy for the plaintiff's said legs and ankles in their then condition, and did, in view of the condition of plaintiff's skin, flesh and blood at that time, and the susceptibility to the influence of the said X-ray treatment, carelessly and negligently place and apply said electrical instrument or appliance too close to the plaintiff's said legs and ankles, and did subject them to the influence of the said X-ray * * * too frequently and for an unreasonably long time." (Italics supplied.)

The declaration alleges the following injuries as resulting from the malpractice of the defendant alleged in the several counts aforesaid, namely:

"By reason whereof the said legs and ankles of the plaintiff were greatly and badly burned by the said defendant, large portions of the skin and flesh to which the said X-ray or X-ray treatment were applied, were destroyed, large and malignant ulcers and sores were formed thereby upon his said legs and ankles, the plaintiff was rendered liable to contract other and permanent afflictions therefrom, and was thereby greatly and permanently hurt, maimed and injured, and has suffered and undergone great pain and anguish of body and mind, and has so continued for a long space of time, to-wit, hitherto, and will so continue during his natural life; and by reason thereof has been and will hereafter be prevented from following his usual and customary business, trade and calling; and has been, and will be hereafter deprived of and prevented from making and earning divers large sums of money, which he could have acquired, earned and made but for his said injuries; and has been compelled to expend and has expended divers large sums of money, to-wit: $1,000 in and about endeavoring to get cured and healed of his said injuries, and will hereafter during his life be compelled to expend large sums of money in and about endeavoring to get cured and healed of the same."

· The defendant demurred to the declaration and to each count thereof. The demurrer was overruled by the trial court. As to the demurrer, only the action of such court in overruling the demurrer to the third, fourth, fifth and sixth counts is assigned as error.

The following were the only instructions complained of:

### PLAINTIFF'S INSTRUCTION, NO. 2.

"The court instructs the jury that if they believe from the evidence that the injuries of which the plaintiff complains were the direct and proximate result of X-ray burns inflicted upon him by the defendant in treating his legs and ankles, and if they further believe from the evidence that when proper instrumentalities and proper care are used in the application of the X-ray treatment of such cases as that of the plaintiff, such burns as were inflicted upon the plaintiff's legs and ankles and the injuries resulting therefrom, are not a natural and probable result thereof, then the fact that the plaintiff was so burned, and that said injuries did result therefrom, may be taken into consideration by you along with all the other facts and circumstances proven in the case, in determining whether the defendant possessed the knowledge, skill and judgment which the law required of him when he so treated the plaintiff's legs and ankles, and whether, in the application of his knowledge, skill and judgment, he measured up to the standard required of him by law in treating him."

### INSTRUCTION GIVEN BY THE COURT AT ITS OWN INSTANCE.

"The court instructs the jury that the fact that after the plaintiff was treated with the X-ray by the defendant ulcers appeared on his legs does not of itself alone entitle the plaintiff to recover; and the jury are instructed that they shall

find for the defendant unless the plaintiff has shown by a preponderance of the evidence that the ulcers were caused by the negligence of the defendant, or his lack of skill, or his failure to apply the same."

There was a verdict of the jury in favor of the plaintiff. There was a motion by the defendant to set such verdict aside, which was overruled and thereupon judgment for the plaintiff was entered by the order complained of and such action of the court below is made the basis of the remaining assignment of error.

*Loyall, Taylor & White* and *Thos. H. Willcox,* for the plaintiff in error.

*Jeffries & Jeffries* and *Tazewell Taylor,* for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

## 1. ON THE SUBJECT OF THE DEMURRER.

As noted above only the action of the court below in overruling the demurrer to the third, fourth, fifth and sixth counts of the amended declaration is assigned as error.

No grounds of demurrer were stated specifically before the trial court as to the fifth or sixth counts. The grounds of demurrer there stated as to the third and fourth counts were as follows:

"As to the third count: Because it does not state what were the reasonably proper and appropriate medicines, preventatives and remedies which should have been used, in accordance with the allegations of said count, by the defendant after he had used and employed the X-ray or X-ray treatment.

"As to the fourth count: Because it does not state what were the reasonably proper and appropriate medicines and remedies which the defendant failed to apply to the plaintiff, as alleged in the declaration, from time to time, as the condition of his legs required, and because the count does not state what were the 'two certain salves' which were prescribed by the defendant, according to the allegations in said count and which were according to said allegations wholly unsuited to the condition of the plaintiff's legs and ankles."

The same grounds of demurrer are urged in the assignments of error before us touching the action of the court below in overruling the demurrer to the third and fourth counts of the declaration.

It will be observed from the above statement of the allegations of the third and fourth counts that the gist of the charges in those counts were as follows:

(a) In the third count the charge is that the defendant did not *possess and use* that degree of knowledge, experience, care and skill to diagnose and treat the disease of the plaintiff which the law imposed upon the defendant under the circumstances alleged, and that the defendant was at fault because of his failure to use such degree of knowledge, experience, care and skill. In other words, it charged that the defendant did not possess and use the ordinary competency which would have resulted from that degree of knowledge, experience, care and skill possessed by physicians in good standing in the same or similar communities with defendant who are specialists in the treatment of diseases by the use of X-rays in the light of the existing state of scientific knowledge on the subject. The count under consideration charges that the defendant was unskilful and negligent in the premises with the meaning aforesaid, but it does not stop with those allegations in a general way. It adds distinct, affirmative allegations of

material facts sufficient to show in what the alleged unskilfulness and negligence charged consisted, to-wit, that *the unskilfulness* aforesaid consisted in this, that the defendant did not possess the ordinary competency aforesaid to anticipate and foresee the probable effect which the application of the said X-ray or X-ray treatment, as used by him upon the plaintiff's legs and ankles would produce; and that he did not possess such competency "to apply reasonably proper and appropriate prescriptions, medicines and remedies thereto," after applying the X-rays to the ankles and legs of plaintiff as he did; and that *the negligence* aforesaid consisted in this, that the defendant, after treating the legs and ankles with X-rays as he did, failed "to apply reasonably proper and appropriate medicines, preventatives and remedies thereto." Here are allegations of fact which sharply and distinctly raised the issues whether the defendant was professionally unskilful and also negligent in the premises.

As we shall presently see, such issues of fact, in so far as they involved the highly specialized art of treatment of the disease of the plaintiff by X-rays, were to be decided, if they could be decided at all, only by the standard fixed by such evidence as might be furnished by experts on the subject. Such a case differs from an ordinary case of allegations of negligence, or other causes of action consisting of acts the nature and consequences of which are matters of common knowledge. Here the plaintiff, a layman, could not have had the knowledge of what specific "prescriptions, medicines and remedies" a physician possessing the ordinary competency aforesaid should not have failed to apply. If he had possessed that knowledge, he would have needed no physician. Whereas the defendant, if he possessed the ordinary competency aforesaid (the duty of which possession the law imposed upon him under the circumstances alleged), upon the charges of professional unskilfulness and negli-

gence being made against him and alleged to consist of the lack of professional knowledge, experience, care and skill aforesaid and failure to apply reasonably proper "prescriptions, medicines and remedies" in the treatment aforesaid, would have known at once how to defend himself against such charges, by his own testimony and by the testimony of other experts on the subject.

The count we have under consideration, therefore, was sufficient in its allegations of material facts to inform the defendant of the nature and character of the demand against him and stated such facts as would enable the court to say, if the facts were proved as alleged, whether they established a good cause of action. Since the *Hortenstein Case,* 102 Va. 914, 47 S. E. 996, the rule in Virginia has been settled that where a declaration measures up to these requirements it is good on demurrer. (See *Virginia, etc., Wheel Co.* v. *Harris,* 103 Va. at page 712, 49 S. E. 991, and cases cited.) Allegations in a declaration, which go beyond these requirements by descending into statements of details of proof, are unnecessary. If a declaration gives the defendant partial but not complete notice of the nature and character of the plaintiff's claim, a bill of particulars may be required of the latter. But, on the point under review, the count we are considering gave the defendant complete notice of the nature and character of the professional unskilfulness and negligence charged by the plaintiff against the defendant. Whether this or that specific prescription, medicine or remedy should have been applied or not applied was a mere matter of evidence upon the issue of fact on the allegations of unskilfulness and negligence made by such count. To require a declaration to allege such details of evidence would be to depart from the rule established in Virginia on this subject.

(b) In the fourth count there are charges in general terms to the effect that the defendant was unskilful and

negligent, and among the allegations of fact constituting such unskilfulness and negligence is the allegation that the defendant "did prescribe from time to time wholly improper, unappropriate and hurtful medicines and so-called remedies, *being two certain salves, which were prescribed by and are known to him,* each of which were wholly unsuited to the condition of the plaintiff's said legs and ankles, but, on the contrary, were calculated to produce and did produce further injuries thereto."

For the reasons stated above, in our consideration of the third count, we are of opinion that the fourth count was also good on demurrer. In regard to the specific allegations that "two certain salves, which were prescribed by and are known" to the defendant, were prescribed by the latter, it is deemed sufficient to say that, as indicated above, the count would have been good on demurrer if it had left out this specific allegation. That was a descent into an allegation of a matter of evidence and may be considered as surplusage. Further, as an allegation of fact it was sufficient to inform the defendant of the nature and character of the two salves, since it is alleged that they "were prescribed by and were known to him." This prevented his being taken by surprise by proof of his having prescribed such two salves.

While the objections to the fifth and sixth counts made in the assignments of error do not appear from the record to have been made in the court below by being specifically stated in the grounds of demurrer, it does not appear from the record that any motion was there made by the plaintiff to require or that the court on its own motion required the grounds of demurrer relied on to be stated (section 3271, Code of Virginia). For this reason and also because no objection is made by plaintiff to our consideration of the assignments of error as to such fifth and sixth counts, we will proceed to consider such assignments.

(c) Three grounds are stated by defendant in the assignments of error and urged on demurrer against the fifth count, which will be considered in their order as set forth below:

(1.) That the standard by which the duty of the defendant to make the preliminary tests and examination of the patient before subjecting him to the X-ray treatment had to be tested was whether other like specialists in good standing, in the same or similar localities as defendant, would have been guilty of the omission to make such preliminary tests and examination; hence, that this count was fatally defective in that it did not allege that other such specialists would not have been guilty of such omission.

In regard to this position it is deemed sufficient here to say that defendant is correct as to the standard by which the duty in question had to be tested. But under the allegations of the count as it stands, that test had to be applied by measuring the evidence, as it might be introduced on the trial, by the standard fixed by the testimony of experts on the subject (since the standard mentioned involved a highly specialized art of treatment). That standard was what such specialists would or would not have omitted to do under the circumstances alleged. An express allegation in the count that other such specialists would not have been guilty of said omission was unnecessary. Such allegation was in substance and effect contained in the allegations of the count as it stands. The failure of the count to contain such express allegation did not deprive the defendant of his right to require the same character of proof on the subject as he was entitled to require if such express allegation had been contained in the count. Hence, there is no merit in this objection.

(2.) That this count is demurrable because it did not allege in detail what test and examination should have been made of the plaintiff before the application of the X-ray—

whether of the heart, of the blood-pressure, of the skin viewed microscopically, of the pulse, of the digestive organs, of the circulation, etc.

The count, however, alleged the failure of the defendant "to make such a test or examination as in the exercise of ordinary care it was his duty to make" under the circumstances alleged. This was a sufficient allegation to raise the distinct issue whether the defendant was professionally unskillful and negligent in this matter. It gave the defendant information of the nature and character of the charge against him and otherwise measured up to the requirement of the established rule on the subject of what allegations of fact are necessary in a declaration, above mentioned. The details as to whether this or that particular test and examination should have been made, were mere matters of evidence. Hence, there is no merit in this objection.

(3.) That this count is demurrable because it failed to allege, except perhaps inferentially, that the plaintiff was in fact more susceptible to the influence of X-rays than are other persons, and that had such tests and examinations been made by defendant as it is alleged he should have made, it would have resulted in any discovery of such susceptibility of the legs and ankles of the plaintiff.

We are of opnion that this point is well taken. This was a necessary allegation of fact under this count of the declaration to show a right of action of the plaintiff upon the issue thereby tendered. Such allegation should have been made and distinctly made, with definiteness and certainty. An inferential allegation of such material fact was insufficient. *Eaton* v. *Moore,* 111 Va., at page 403, 69 S. E. 326.

For the latter reason, we are of opinion that the fifth count was bad on demurrer and that the trial court erred in overruling the demurrer to such count. But, as we shall presently see, upon the trial the case did not turn upon the existence of any peculiar susceptibility of the plaintiff to

X-rays; there was no evidence that such susceptibility in fact existed; the proof to sustain the verdict was of a different character and the verdict was necessarily based upon other grounds. Therefore, the error mentioned appears from the record to have been harmless and hence was not reversible error.

(d)  There are only two grounds of the assignments of error with respect to the action of the trial court in overruling the demurrer to the sixth count, which are insisted upon by the defendant. These will be considered in their order as stated below.

(1.)  That the count is based on the allegation that it is the duty of a physician in the exercise of ordinary care to warn a patient of the danger of possible bad consequences of using a remedy; and that this is not *per se* an act of negligence.

The latter position is correct. The count under consideration, however, does not negative the correctness of such position. It does not depend upon an allegation that the duty to warn in question exists in all cases. The count alleges that in the instant case the plaintiff "consulted the said defendant as a physician regarding said eczema and as to the proper treatment therefor;" that, in substance, the defendant then well knew, or by the exercise of ordinary skill and forethought should have well known of the danger aforesaid; that notwithstanding this situation the defendant *misled* the plaintiff by not only not giving him the warning aforesaid, but by affirmatively assuring him that if the defendant applied the X-ray treatment to the plaintiff's legs and ankles "his eczema would be cured and his legs and ankles would be well within a short time, to-wit, eight weeks." This count also contains the allegation that had the defendant given the plaintiff the warning aforesaid the latter would not have submitted to the treatment of the X-rays. In such a situation we are of opinion that the

count stated a good cause of action against the defendant for giving, not a mere opinion, but the positive assurance of cure alleged.  Hence, we do not find any merit in this objection.

(2.)  That if the foregoing position be correct, the count is based upon a breach of contract as giving the right of action, in which case it sounds in contract and not in tort and cannot be united in this action with other counts in tort.

It is deemed sufficient to say in regard to this position that the count under consideration is unmistakably in tort. Of course there can be no question upon elementary principles of a plaintiff's right to waive a contract and sue in tort for damages for breach of contract.  This was what was done by this count in accordance with its allegations. Hence, we find no merit in this objection.

Our conclusion is, therefore, with hespect to the assignments of error touching the action of the trial court in overruling the demurrer, that there was no error in such action, except with respect to the fifth count of the declaration, and that that action was harmless error, as above stated.

2. We come now to the consideration of the assignments of error with respect to the instructions.  They will be considered in their order as stated below.

(1.)  In regard to plaintiff's instruction No. 3, and the instruction given by the court at its own instance:

These instructions are copied above.

But one and the same objection is urged by the defendant to both of these instructions, and that is, that the jury were allowed thereby to give *some* weight to the *result* alleged *"along with all the other facts and circumstances proven in the case,* in determining whether the defendant possessed the knowledge, skill and judgment which the law required of him when he treated  *  *  *  the plaintiff's legs and

ankles, and whether, in the application of his knowledge, skill and judgment, he measured up to the standard required of him by law in treating" the plaintiff. Whereas, it is contended by defendant that no weight whatever, "however slight," could properly be given to a "bad result" as evidence of the unskilfulness, or of the negligence, alleged in the declaration against the defendant.

A great number of authorities are cited and relied on by the able counsel for the defendant to sustain the position last above stated. A careful examination of all of them discloses, however, that none of them holds that no weight whatever, "however slight," is to be given to a bad result in a case such as that before us. The extent of their holding is that the result, however bad, is, *of itself alone,* insufficient evidence to establish the unskilfulness or the negligence of a physician in such a case as that in judgment. See the following cases cited and relied on by defendant: *Ewing* v. *Goode* (C. C.), 78 Fed. 442, in which Judge Taft delivered the opinion of the court; *McGraw* v. *Kerr*, 23 Colo. App. 163, 128 Pac. 870; *Miller* v. *Toles*, 183 Mich. 252, 150 N. W. 118, L. R. A. 1915 C, 595; *Staloch* v. *Holm*, 100 Minn. 276, 111 N. W. 264, 9 L. R. A. (N. S.) 712; *Sheldon* v. *Wright*, 80 Vt. 298, 67 Atl. 807; *Phebus* v. *Mather*, 181 Ill. App. 274; *Moline* v. *Christie*, 180 Ill. App. 334; *Adolay* v. *Miller*, 60 Ind. App. 656, 111 N. E. 313; *Pettigrew* v. *Lewis*, 46 Kan. 78, 26 Pac. 458; *Feeney* v. *Spalding*, 89 Me. 111, 35 Atl. 1027; *Wood* v. *Wyeth*, 106 App. Div. 21, 94 N. Y. Supp. 360; *Bigney* v. *Fisher*, 26 R. I. 402, 59 Atl. 72; *Norkett* v. *Martin* (Colo.), 165 Pac. 256; *Dishman* v. *North Pacific Benefit Asso.*, 96 Wash. 182, 164 Pac. 943; *Sweeney* v. *Erving*, 35 App. Cas. (D. C.) 57, 47 L. R. A. (N. S.) 734; *Baker* v. *Hancock*, 29 Ind. App. 456, 63 N. E. 323, 64 N. E. 38; *Dye* v. *Corbin*, 59 W. Va. 266, 53 S. E. 147; *Lawson* v. *Conaway*. 37 W. Va. 159, 16 S. E. 564, 18 L. R. A. 627, 38 Am. St. Rep. 17; *Robinson* v. *Crotwell*, 175 Ala. 194, 57 So. 23.

The principle upon which the holding referred to rests is correctly stated in those authorities.

As said by Judge Taft, in the case of *Ewing* v. *Goode, supra* (C. C.), 78 Fed. 442: "* * * where a case concerns (a) highly specialized art * * * with respect to which a layman can have no knowledge at all, the court and jury must be dependent on expert evidence. There can be no other guide, and, where want of skill or attention is not shown by expert evidence applied to the facts, there is no evidence of it proper to be submitted to the jury."

And in the opinion of the court in *McGraw* v. *Kerr, supra,* 23 Colo. App. 171, 128 Pac. 873, it is said: "The authorities are practically unanimous in holding * * * that as to what is or is not proper practice in examination and treatment, or the usual practice and treatment, is a question for experts, and can be established only by their testimony. * * * In *Jackson* v. *Burnham, supra,* 1 Colo. App. 237 [28 Pac. 250], the court * * * said that in order to determine whether the defendant (a surgeon) exercised ordinary care and skill in examining the case, as well as in applying remedies thereafter, resort must be had to the opinion of experts, based upon the ultimate facts as the jury may find them established by the weight of the evidence. The only rule asked for in the language of the instruction now under consideration is that, upon the question of standard by which the jury must be guided in arriving at a conclusion as to what constituted care and skill, the testimony of experts (in this case the physicians) alone must be considered. The standard and the testimony by which it can be ascertained are the only matters involved. Upon that question we think there is no contrariety of opinion. If no standard was established by the testimony of physicians, then the jury had no standard."

But the opinion last quoted correctly adds: "This does not militate against the right of the jury to decide between

conflicting testimony of different physicians or experts on the question of a standard; it only goes to the extent that, if in doubt upon the matter necessary to enable the jury to say that a standard has been fixed for its guidance by the testimony of such qualified witnesses, then it cannot from other incompetent evidence raise a standard."

Now, in the instant case, as will be hereinafter more particularly noted, there was expert evidence in behalf of the plaintiff, and also furnished by defendant, on the question of what was the standard of professional skill and care by which the competence and conduct of the defendant was to be measured; and there were the ultimate facts upon which this expert evidence was based as the jury might find them to be from a preponderance of all the evidence. Therefore it was a case in which the result aforesaid was properly to be considered by the jury along with all the other facts and circumstances proven in the case.

It is true that in the case of *Ewing* v. *Goode, supra* (C. C.), 78 Fed. 442, the opinion of Judge Taft uses the following language quoted in the petition of defendant, namely:

"If the maxim of *res ipsa loquitur* were applicable to a case like this, and a failure to cure were held to be evidence, however slight, of negligence on the part of the physician or surgeon causing the bad result, few would be courageous enough to practice the healing art, for they would have to assume financial liability for nearly 'all the ills that flesh is heir to.' "

But subsequent portions of the opinion of Judge Taft in that case expressly set forth that he considered that a bad result in such a case was some evidence of the unskilfulness or negligence of the physician. The opinion concedes that such a result, of itself alone, is a "scintilla of evidence" of such unskilfulness or negligence; but holds that as the scintilla doctrine is not followed in federal courts, the inquiry before the court in that case was: "Does the

case now submitted show more than a scintilla of evidence tending to show want of skill or care by defendant or injury caused thereby." The opinion thereupon holds, in substance, that there was, aside from the result, no evidence whatever for the plaintiff of negligence or unskilfulness of the defendant in the manner of the performance of the operation by him or in his treatment; and that the sole addition to the scintilla of evidence afforded by the unfavorable result of the operation was the negligence of the defendant's office girl. (The opinion then proceeds to show that the defendant was not liable for the latter negligence.)

There was no expert evidence whatever in favor of the plaintiff in the case last cited, nor any evidence tending to show that on applying the standard fixed by the expert evidence in the case that there was any unskilfulness or negligence on the part of the defendant. In most of the other cases next above cited, either there was no expert testimony for the plaintiff or no sufficient evidence on applying the standard fixed thereby that there was unskilfulness or negligence on the part of the defendant, or the expert testimony showed that the injury complained of with equal probability might have resulted from some cause for which the defendant was not responsible as from a cause for which he was responsible.

In the cases of *McGraw* v. *Kerr, supra,* 23 Colo. App. 163, 128 Pac. 873, and *Sheldon* v. *Wright, supra,* 80 Vt. 298, 67 Atl. 807, however, the testimony of the experts (physicians) testifying for plaintiff and defendant was conflicting. We have quoted above from the former; the following is said in the latter case:

"The conclusions of the experts were conflicting. If some were right others were necessarily wrong. The jury were left to determine the matters upon the whole evidence, and this course was entirely right, as, in any view, the strictly expert evidence was without value, except as it was based

upon facts which the jury might find from other evidence.
The ordinary witness testifies to facts about which the
jurymen have or should have no knowledge of their own;
but, nevertheless, they must apply their own good judg-
ment to the testimony of such witnesses in determining
what facts are proved. The expert, in a case like this, testi-
fies to facts of a different class, or to the interpretation of
facts, matters for the most part about which the jury are
not expected to have knowledge of their own; but, never-
theless, they must apply their sound judgment to the com-
parison, sifting and weighing of such testimony and to a
consideration of the sources from which it comes."

Among the instructions held in the latter case to have
been properly refused was the following. An instruction
"that the results of defendant's treatment of plaintiff's
leg are in themselves alone not the slightest evidence of
defendant's negligence or want of skill." With reference
to that instruction the appellate court in that case said:
"* * * the evidence as to the results of the treatment did
not stand alone, but was inextricably woven in with a large
amount of medical and other testimony and was so con-
nected with the rest of the testimony that it has to be
weighed therewith." Accordingly the court in that case
held that it was proper for the jury to consider the result
of the treatment along with the expert testimony and other
facts and circumstances proven in the case.

Hence, we are of opinion that there was no error in the
action of the trial court in the instant case in giving the
instructions objected to by the defendant.

We are strengthened in our view of the correctness of
this conclusion by a consideration of the following authori-
ties cited and relied on by the plaintiff: *Kopecky* v. *Hasek
Bros.* (Iowa), 162 N. W. 828; *Shockley* v. *Tucker*, 127
Iowa, 456, 103 N. W. 360; *George* v. *Shannon*, 92 Kan. 801,
142 Pac. 967, Ann. Cas. 1916 B, 338..

3. This brings us to the consideration of the remaining assignment, which is, that the trial court erred in its refusal to set aside the verdict and grant the defendant a new trial.

In considering this assignment of error we, of course, cannot enter upon any attempt to reconcile the conflicts in the evidence, of which there are very many. Our sole function is to determine whether the record discloses sufficient evidence of probative value to support the verdict, if such evidence was found credible by the jury.

Now it should be borne in mind that the case in judgment involves two standards of professional skill and care by which the evidence as to the competency and the conduct of the defendant is to be measured—one standard having reference to the technique or mechanical operation of the X-ray apparatus—the other standard having reference to the possession and use of the professional skill and care incumbent upon the defendant with respect to the diagnosis and treatment of the disease of the plaintiff in matters other than the mere mechanical operation of said apparatus. For the sake of brevity, the former will be hereinafter referred to as the mechanical standard and the latter as the general professional standard of skill and care.

The two standards mentioned both involve, in the instant case, the highly specialized art of the treatment of the disease of the plaintiff by X-rays, and, as appears from the authorities cited above, in so far as they do so, expert testimony before the jury fixing such standards was essential to the support of the verdict of the jury; since otherwise the jury, to the extent of the questions involving such specialized art, would have had no standard in mind by which to measure the other facts proven in the case.

Now, as to the mechanical standard of skill and care, there was no expert evidence in the case except the testimony of the defendant and of other expert witnesses for the defendant; but there was sufficient evidence in the case,

when measured by the mechanical standard fixed by the testimony for defendant, to support the verdict of the jury, certainly; upon the issues joined on the first and second counts of the declaration. It is deemed sufficient to mention only the following details of such evidence, namely: There was evidence in the case to the effect that the defendant did not keep an accurate record of the X-ray treatment or any record of the exact "dose" of X-rays in fact applied in the several treatments therewith; that if the standard "dose" only had been applied it was extremely improbable that any bad result would have been caused; that the defendant indeed, *ante motem litem,* took the positive position that such result could not have been caused by the X-ray treatments; that the defendant testified on a former trial of the case, and, in effect, on the trial under review, that such result was not a natural and probable result of the application of such treatments in standard doses; that his expert witnesses all so testified; the cross-examination of the defendant also tended to show that his memory of the "dose" aforesaid applied by him in the several treatments aforesaid was not to be relied on; there were inconsistent statements made by the defendant at different times as to his opinion of the causes of the bad result; and there was other evidence to support a conclusion of the jury that the "dose" aforesaid, in fact applied as aforesaid, was not in accordance with the mechanical standard fixed by the expert testimony of the defendant himself.

It is true that such testimony did not show that the bad result might not have happened without fault of the defendant; but there was sufficient of such evidence, the credibility and weight of which was for the jury, tending to show that the bad result was more probably due to lack of skill or negligence of the defendant as charged in the counts of the declaration other than the fifth count.

This degree of proof is all that is required of a plaintiff in a civil case. He is not required to exclude by his proof the possibility of the result complained of having been due to causes for which the defendant is not responsible.

It is true that if the proof leaves it equally probable that the bad result complained of may have been due to a cause or causes for which the defendant was not responsible, as to a cause or causes for which he was responsible, the plaintiff cannot recover. *Norfolk & Western Ry. Co.* v. *Cromer,* 101 Va. 671, 44 S. E. 898; *Norfolk & Western Ry. Co.* v. *McDonald,* 106 Va. 207, 55 S. E. 554; *Clinchfield Coal Corp.* v. *Cruise,* 117 Va. 645, 86 S. E. 135; *Consumer's Brewing Co.* v. *Doyle,* 102 Va. 402, 46 S. E. 390; cited by defendant. But such is not the instant case.

As to the general professional standard of skill and care, the plaintiff introduced one expert witness only, Dr. Mc-Cormick. The evidence, without conflict, shows that he is a general practitioner of exceptionally high standing in the profession; that he had used the X-ray to take photographs; that he had never used the X-ray curatively, but had had personal experience and knowledge of ulcers caused by X-rays, and from his professional training and reading of scientific books treating of X-rays and the results of their curative use, had a certain degree of knowledge on the subject of the proper curative use of X-rays, which he disclosed to the jury. He expressly declined to testify as an expert upon the subject of the mechanical standard aforesaid. We are of opinion that his testimony was undoubtedly admissible on the former subject, and that its credibility and weight were for the jury. *Arminius Chemical Co.* v. *Landrum,* 113 Va. 7, 21, 73 S. E. 459, 38 L. R. A. (N. S.) 272, Ann. Cas. 1913 D, 1075; 1 Wigmore on Evidence, sections 555-569, 665, 687.

There was, therefore, expert evidence in behalf of the plaintiff in the instant case on the subject of the general professional standard of skill and care aforesaid.

It is true there was sharp conflict between the testimony of Dr. McCormick and the expert testimony of the defendant himself and of the other expert testimony for defendant on certain points; on other points there was no conflict. It is true also that the defendant was shown by the evidence to be of the very highest character and professional standing, and his expert witnesses were the most eminent in this country.   All this was before the jury.   It would serve no useful purpose for us to set out here in detail the conflict or concurrence in such evidence, since the verdict of the jury concluded the facts involved therein.   It is deemed sufficient to say that Dr. McCormick gave it as his positive and unqualified opinion that the injury complained of by the plaintiff was an "X-ray burn" and "could come only from the X-ray and nothing else;" that it was of "the severest degree;" that "this burn went down and involved the bone. I put my finger on the bone, and the membrane which covers the bone on both legs was burned, and the symptoms upon which I diagnosed that as a severe burn were a dirty, gray, dry slough, unlike any slough that you see in any other ulceration; the unusual hard gristly-like border to it, and the discoloration of the skin around the outside of the hard horny border."   The expert testimony for defendant was to the effect that it cannot be told from a mere examination of an ulcer, even of this severe character, whether it was caused by X-rays; but they admitted that from such an examination, considered in the light of the history of the case, such diagnosis could be made with reasonable certainty.   The evidence in the record is that Dr. McCormick based his diagnosis on such an examination in the light of the history of the plaintiff's case.   And the expert testimony for defendant, to the effect that in their opinion the ulcers in question were not caused by X-rays, was based on the assumption that the X-ray "dose" was applied in accordance with the mechanical standard afore-

said, whereas there was evidence in the case as aforesaid, tending to show that such standard was not in fact followed. The whole subject was before the jury. By their verdict they found the fact to be that the injury was caused by the X-rays, and that is conclusive upon us of that fact.

The cause of the injury being the X-rays was, however, but one element of fact in the case. As the jury were properly instructed (by instructions not drawn in question by the assignments of error and hence not copied above), if the defendant exercised ordinary care and skill in the premises, the plaintiff was not entitled to recover, although the injuries complained of were caused by the X-ray treatment; and the question still remained whether the defendant did or did not exercise such care and skill. On the latter question the expert testimony for the plaintiff of Dr. McCormick was positive to the effect, (1) that the action of the defendant in advising and applying the X-ray treatment for eczema to plaintiff's legs and ankles, in the condition they were at the time, did not measure up to the general professional standard of skill and care aforesaid— that in his opinion such treatment was not proper—in other words, that it was malpractice; and (2) Dr. McCormick's testimony tended to show that the application in fact made by the defendant was too frequent, and too strong, and so constituted malpractice according to the mechanical standard in evidence as aforesaid, and besides there was other evidence to the same effect as above noted. That is to say, there was sufficient evidence in the case, when measured by the general professional standard, as well as by the mechanical standard of skill and care aforesaid, to support the verdict of the jury upon the issues made by the first and second counts of the declaration.

The testimony of Dr. McCormick to the effect that the advising and applying the X-ray treatment for eczema for plaintiff's legs and ankles in the condition they were at the

time was malpractice, tended to sustain, on behalf of the plaintiff, the issue joined on the first count of the declaration and was properly admissible in the case.

It is urged by defendant that the declaration did not make as broad an issue of fact as that testimony tended to prove; that, "It was claimed in the declaration that the X-ray was put too close, etc., but never that it was wrong to prescribe X-ray for the eczema with which the plaintiff was suffering." This position as to the allegations of the declaration is correct; but it does not follow because testimony exceeds in its effect what it is incumbent on the party introducing it to prove, that it is inadmissible, or does not tend to prove a lesser issue of fact. The larger proof may include proof of the lesser issue of fact; as, if it were alleged that A did not injure B in a certain personal encounter between them at a certain time and place, and the proof should be that no personal encounter ever occurred between A and B. So, *mutis mutandis*, in the instant case. The allegation of the first count of the declaration is not, indeed, that for the defendant to prescribe and apply any X-ray treatment whatever for the eczema of plaintiff was malpractice; but only that to prescribe and apply a certain X-ray treatment which was in fact applied was malpractice. But proof of the former would necessarily include proof of the latter fact.

And, further, the admission of such larger proof than needful, could not be the subject of any proper objection by the defendant, since it did not change the issue. The defendant had need still to maintain only on his part by a preponderance of the evidence that his actual prescription and application of X-rays was not malpractice.

Hence, we are of opinion that there is no merit in such position of defendant.

As above noted, there was no evidence in the case tending to show that the plaintiff was within the class of "some

19

persons" alleged in the fifth count of the declaration to be more susceptible to X-rays than other persons. Dr. McCormick expressly declined to say that there was even such a class of persons. The expert witnesses for defendant differed on this subject. The most that any of them testified was that some of them stated that to some extent persons of a fair complexion were more susceptible to X-rays. But it was affirmatively proved that the plaintiff is a dark brunette in complexion. Hence, there was no evidence on this subject to support the fifth count of the declaration.

The same is true with respect to the sixth count of the declaration in so far as it is based upon the allegation of the peculiar susceptibility aforesaid of the plaintiff.

Whether there was sufficient proof to have sustained the verdict of the jury, if based on the other allegations of the sixth count, or on the allegations of the third and fourth counts of the declaration, it is unnecessary for us to decide, since, in view of our conclusions above, there was sufficient evidence to support the verdict based upon the first and second counts of the declaration, and since there was no error of the trial court in the giving of the instructions complained of, or in the admission of the testimony objected to, namely, that of Dr. McCormick.

For the foregoing reasons, we are of opinion to affirm the judgment complained of, which will be accordingly done.

*Affirmed.*