**Warren Wayne CUNNINGHAM,
Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 81–1437.**

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 8, 1981.

Decided July 19, 1982.

848

J. Michael Gamble, Amherst, Va. (Donald G. Pendleton, Pendleton & Gamble, Amherst, Va., James A. Eichner, Beale, Eichner, Wright, Denton & Shields, Richmond, Va., on brief), for appellant.

Robert W. Jaspen, Asst. U. S. Atty., Richmond, Va. (Justin W. Williams, U. S. Atty., Alexandria, Va., on brief), for appellee.

Before WIDENER, ERVIN and CHAPMAN, Circuit Judges.

WIDENER, Circuit Judge:

This is a medical malpractice action brought because plaintiff allegedly became impotent as a result of a sphincterotomy performed at the McGuire Veterans Hospital in Richmond. The district court found in favor of the defendant, and we affirm.

Plaintiff is a partial quadriplegic as a result of spinal injuries sustained in 1968 in Viet Nam. Plaintiff is confined to a wheelchair, and, beginning at the time of the Viet Nam injuries, he used an external catheter to aid with urination. In the summer of 1976, plaintiff began experiencing severe headaches in connection with a full bladder. In August 1976, a physician at McGuire treated plaintiff for an infection of the bladder. He was advised to switch to an internal catheter and begin the use of certain antibiotics. When that treatment failed to alleviate the problems, plaintiff was advised to undergo a sphincterotomy in order to prevent the possibility of degenerative kidney failure. Plaintiff first objected to surgery but eventually underwent the procedure in February 1977. The plaintiff allegedly has been unable to obtain an erection since the surgery.

Plaintiff claims that prior to the surgery he inquired as to whether the operative procedure could affect his sexual capabilities.

He allegedly was told by his physician that the operation would cause no such problems. The physician remembers no such inquiry but admits that he did not voluntarily advise the plaintiff that the loss of erectile capacity was a risk of the surgical procedure. Plaintiff has contested several aspects of the trial.

First, plaintiff claims that the trial court improperly considered the fact that plaintiff was living with his girlfriend without benefit of marriage as going to his credibility. Plaintiff, however, suffered no injury from that reasoning of the court. The only factual issue considered by the court at trial that was dependent on the plaintiff's credibility was with respect to whether the plaintiff, in fact, asked the physician as to possibility of the side effects of the operation. The trial court concluded that a prudent man in the plaintiff's position would make such an inquiry, and assumed in its opinion that the physician did not "respond appropriately to the question asked," so any error by the consideration of the subject was harmless.

Plaintiff's other challenges concern the district court's application of Virginia law to the case. Virginia recognizes the doctrine of informed consent, a rule requiring a physician to disclose to patients the alternatives to and risks of a particular treatment. *Bly v. Rhoads*, 216 Va. 645, 648, 222 S.E.2d 783, 785–86 (1976); *Hunter v. Burroughs*, 123 Va. 113, 133–34, 96 S.E. 360, 366–67 (1918). Nevertheless, failure to warn of particular consequences "is not *per se* an act of negligence." Id. When a physician fails to warn of possible consequences, courts often must consider whether the failure was the proximate cause of the subsequent consequences. That is, the court must consider whether the patient would have consented to the treatment if he had known of the associated risks. While Virginia courts have yet to consider the question, a majority of courts have applied an objective standard in deciding whether the patient would have consented. These courts have inquired whether a reasonable man in the plaintiff's position would have consented to the treatment, even if informed of possible adverse consequences. *E.g. Karp v. Cooley*, 493 F.2d 408, 422 n. 18 (5th Cir.), *cert. denied*, 419 U.S. 845, 95 S.Ct. 79, 42 L.Ed.2d 73 (1974); *Canterbury v. Spence*, 464 F.2d 772, 790–91 (D.C.Cir.), *cert. denied*, 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972); *Bowers v. Garfield*, 382 F.Supp. 503, 505–06 (E.D.Pa.) aff'd unpublished, 503 F.2d 1398 (3rd Cir. 1974). In *Dessi v. United States*, 489 F.Supp. 722, 728–29 (E.D.Va.1980), the court concluded that Virginia courts would apply the objective standard when confronted with such a case. Similarly, the trial court in the instant case applied an objective standard. We think that Virginia courts would so hold and thus there was no error in the trial court's use of an objective standard.

Appellant also has argued that even if use of an objective standard was appropriate, the district court's application of it was incorrect. We disagree. The trial court considered ample evidence of serious medical consequences faced by the appellant if a sphincterotomy had not been performed. These included a significant chance of degenerative kidney failure [1] and the likelihood of elevated blood pressure which could lead to a stroke or blowout of an artery elsewhere. Furthermore, the court heard testimony that prior to the operation, the appellant was experiencing severe headaches once or twice a day. There also was testimony that the vast majority of similarly situated persons, when told of the possibility of sexual dysfunction, still consent to the surgery. Finally, there was testimony that the chances of experiencing sexual dysfunction as a result of the operation were quite small. There was thus ample evidence, F.R.C.P. 52(a), for the trial

---

1. A medical study introduced into evidence by defendant, for example, shows that kidney disease is the leading cause of death in paraplegics and that 43 percent of paraplegics die of kidney disease. Hackler, A 25-Year Prospective Mortality Study in the Spinal Cord Injured Patient: Comparison with the Long-Term Living Paraplegic, 117 J. Urology 486, 486 (1977).

court to conclude that a reasonable, prudent man who was informed of the risks associated with the surgery, would still consent to it, and to hold that there was thus no causal connection between the physician's assumed inappropriate response and plaintiff's injury. *Canterbury*, 464 F.2d at 791; *Dessi*, 489 F.Supp. at 730.

The judgment of the district court is accordingly

AFFIRMED.